Tommy McINTOSH *v.* STATE of Arkansas

CR 99-64                                        8 S.W.3d 506

Opinion delivered January 13, 2000

*Richard E. Holiman,* for appellant.

*Mark Pryor,* Att'y Gen., by: *James R. Gowen, Jr.,* Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Tommy McIntosh appealed his conviction of aggravated assault and sentence of nine years to the court of appeals, and raised three points for reversal. The State responded first by filing a motion to dismiss wherein it claimed McIntosh had prematurely filed his motion for new trial on August 28, 1998, or five days before his conviction judgment was entered on September 2, 1998. The State asserted that, because McIntosh's motion was untimely and ineffective, his time for appeal had not been extended, and therefore his thirty-day period for appeal commenced from September 2, 1998, and ended on October 2, 1998. Because McIntosh waited until October 22, 1998, to file his notice of appeal, the State argued McIntosh's appeal was late and should be dismissed.

In response to the State's dismissal motion, McIntosh argued to the court of appeals that he had filed two supplemental motions for new trial after his conviction judgment was entered on September 2. These two motions were filed on September 21, 1998, and September 23, 1998, wherein he essentially re-alleged the same grounds previously contained in his prejudgment motion of August 28, 1998. He stated that his subsequent post-trial motions stood on their own allegations as if his premature August 28 new-trial motion had never existed. As a consequence, McIntosh contended his motions for new trial were timely filed, and they thereby extended his appeal time thirty days from the time his new trial motions were denied by the trial court after a hearing on September 25, 1998. *See* Ark. R. App. P.—Crim. 2(a)(2) (1998); *see also* Ark. R. Crim. P. 33.3 (1998). In sum, McIntosh asserted that his appeal time ended on October 26, 1998, so his notice of appeal filed on October 22, 1998, was timely. After considering the State's motion to dismiss and McIntosh's response, the court of appeals denied the State's request without an opinion; however, instead of

going forward on the merits in the case, it certified this case to us, asking us to clarify the foregoing issues and confirm whether McIntosh's notice of appeal was timely, and whether an appellate court has jurisdiction to decide the case on its merits. We accepted certification of the case.

In addressing the procedural matters set out above, the State, citing *Davies v. State*, 64 Ark. App. 12, 16, 977 S.W.2d 900, 903 (1998), restates its earlier position that when a motion for new trial is filed prior to entry of judgment, it is untimely. It also contends that the fact that supplements or amendments relating back to the original untimely motion have been added after the entry of judgment does not serve to make the original motion timely. Relying on *Hicks v. State*, 324 Ark. 450, 921 S.W.2d 604 (1996), the State further submits that, when a motion for new trial is untimely, a notice of appeal must be filed within thirty days of the entry of judgment, or it, too, will be untimely.

The *Hicks* case is significantly distinguishable from the case now before us. There, the defendant Hicks was found guilty, and he filed a motion for new trial, setting out three grounds why his motion should be granted. However, this motion was filed three days prior to the entry of his conviction judgments. Six days after his judgment was filed, Hicks filed what he labeled as an amendment to his earlier motion for new trial, but the amended motion contained two new grounds without mentioning his earlier ones.[1]

In the instant case, McIntosh engaged new counsel who timely filed two new motions wherein he repeated the same grounds contained in his prejudgment motion; he merely added affidavits to support the same and only claims he ever asserted as grounds for a new trial. As McIntosh contends on appeal, while his earlier August 28 new-trial motion may have been void and ineffective, his post-conviction motions for new trial fully asserted the

---

[1] While it is not argued, another reason *Hicks* differs from the McIntosh case is that Rule 33.3 of the Rules of Criminal Procedure and Ark. R. App. P.—Crim. 2(a)(2) and (3)(b) were not in effect when the new-trial motions and notice of appeal were filed in *Hicks*. Then, Rule 36.22 contained the same language Rule 33.3 later adopted, but in 1995 when Hicks was tried, our criminal procedure and appellate rules did not encompass the "deemed denied" language our Criminal Appellate Rule 2(a) and (3) does now. However, even if it had, the trial court failed to rule on Hicks's amended new-trial motion of December 20, 1995, and the amended motion would have been denied on January 19, 1996, the same day Hicks filed his notice of appeal. In other words, Hicks's notice of appeal was a day early.

same and only grounds he wished to have the trial court consider and decide. When the trial court heard and denied McIntosh's motions on September 25, 1998, McIntosh had thirty additional days from the trial court's order of denial to file his notice of appeal; he did so on October 22, 1998. *See* Ark. R. Crim. P. 33.3 and Ark. R. App. P. — Crim. 2(a)(2). We hold McIntosh's statement of the law is correct, and therefore we rule McIntosh has timely filed his appeal. We now turn to the merits of the three points he offers for reversal.

McIntosh first argues the jury panel was tainted as a result of a biased remark made by a panel member, Hannah Dozier, during voir dire. When asked if the panel member knew defense witnesses Kesha Miller or Robert McIntosh, Dozier volunteered that if the Robert McIntosh was known as "Say," she was already biased against him. The trial court excused Dozier from further service. The trial court asked if anyone else knew of Robert McIntosh, and two other panel members said that they might know him. The judge asked if that would make a difference believing or disbelieving the witness's testimony. One of the two panel members, Janaytha Perry, said, "No, sir," at which point Tommy McIntosh's counsel added, "To make sure that they understand, this [witness] is Robert McIntosh, Jr. . . . and not 'Say' McIntosh, Sr." Both Perry and the other inquiring member, Marilyn Jones, indicated they understood. The trial court then allowed the two witnesses to be sworn, and the State and defense counsel selected twelve jurors. After the jurors were selected, defense counsel asked for a mistrial, stating Dozier's earlier remarks had biased the jury panel against the defendant. The trial court disagreed, and denied the request, stating, "The way the record appears now, it appears that it's been cleared up that they're [Robert McIntosh, Jr. and Robert 'Say' McIntosh, Sr.] not the same person." The trial court was correct in its ruling.

Trial judges are granted wide latitude of discretion in granting or denying a motion for mistrial, and we will not reverse the trial court's decision absent an abuse of that discretion or manifest prejudice to the complaining party. *Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997). The rule is also settled that a jury is presumed to be unbiased and qualified to serve, and the burden is on the appellant to show otherwise. *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996). Here, appellant McIntosh failed to show

Dozier's comments had in anyway prejudiced the remaining jury panel, and, in fact, defense counsel clarified any existing misunderstanding that the witness who was to testify was not Robert "Say" McIntosh. Again, it was "Say" McIntosh against whom Dozier had expressed a bias. Thus, we cannot say that the trial court abused its discretion in denying the motion for mistrial.

In his second point, McIntosh contends the trial court erred in denying his mistrial motion when the prosecutor made remarks during opening argument that McIntosh claims violated his Fifth Amendment right not to be compelled to testify against himself. McIntosh's felony charges resulted from a shooting incident that took place from a second-story balcony of an apartment rented by McIntosh's girlfriend, Kesha Miller. In opening remarks, the deputy prosecutor stated the following:

> They [the victims] both look up, up to the balcony to the second floor, and they see this Defendant with a handgun pointing down onto the ground, but looking straight ahead talking to someone else. And then they're going to testify there are two to three more shots from this handgun. They watch, and they hear the sounds again. They hear the gunshots. They see the bullets hitting the dirt, and the dirt flying up. They see sparks from one of the bullets hitting a rock. They can feel the vibrations of the bullets in the ground, and they also, they feel a little afraid.

> \* \* \*

> He [the witness] also looks up, and he sees this Defendant standing on the balcony, having a handgun, pointing it down, and he had, shoots two three times. He sees the dirt flying. He hears gunshots. *Perhaps the only person there that did not see the gunshots, did not feel any fear at all about what was going on is the Defendant himself, because he wasn't looking where he was shooting. He wasn't standing on the ground. He wasn't feeling the vibrations.* (Emphasis added.)

McIntosh's counsel objected to the prosecutor's remarks on Fifth Amendment grounds, contending that McIntosh was the only person who could refute the remarks. He also submitted that the prosecutor's comments were not within the proper scope of opening statement because the comments ventured into speaking of sights, feelings, and emotions of McIntosh. Such arguments have no merit. In making his opening argument, the prosecutor knew the State had three witnesses (the two victims and a third witness) who

would identify Tommy McIntosh as the person they saw on the second-story balcony, firing a gun while not looking in the direction that he was pointing the gun. Obviously, the State's witnesses could fairly testify that, because they saw him shooting his gun from the balcony, Tommy McIntosh did not feel the vibrations on the ground, nor did he feel any fear about what was going on. The prosecutor's opening remarks were fair inferences from the evidence he intended to, and did, present at trial. Accordingly, McIntosh's Fifth Amendment right was not violated in these circumstances.

In his final argument, McIntosh asserts that the trial court erred in denying his request for new trial because extraneous information was brought to the jury's attention during the deliberations, and undue influence was improperly brought to bear upon a juror. In support of Mcintosh's motion, his aunt, Leanna Godley, averred that two jurors told her that, "if they did not vote for McIntosh's conviction, they would be penalized." Godley also stated that two jurors said that, during deliberations, some other jurors related McIntosh had been previously convicted of drug charges and sentenced, but had been released early. In addition, McIntosh offered testimony of a juror, Tamara Townsend, who asserted she felt threatened by another juror (Dr. Joseph Kueter), and if she had not felt like she would have been "penalized," she would have voted not guilty.[2] The trial judge called Dr. Kueter as a witness and the doctor denied making such threats, nor did he recall hearing any threats. Townsend further claimed that McIntosh's earlier conviction was discussed and McIntosh should be given a stronger sentence because he "knows how to beat the system."

■ McIntosh's arguments bearing on juror misconduct are meritless. Regarding juror Townsend's charge that alleged threats had been made during deliberations that caused her to fear voting in McIntosh's favor, our law is clear that such juror testimony is impermissible. Rule 606(b) controls and reads as follows:

> Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations to the effect of anything upon his or any other juror's mind or emotions as influencing him to asset [assent] to or dissent from the*

---

[2] Jurors Dr. Kueter and Kessmidge Daniels denied hearing (or making) any threats, although Daniels recalled hearing McIntosh had "tricked the system to get [out], so he needed to serve a longer term."

*verdict or indictment or concerning his mental processes in connection therewith,* nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. (Emphasis added.)

*See also Fulmer v. State,* 337 Ark. 177, 987 S.W.2d 700 (1999); *Tosh v. State,* 278 Ark. 377, 646 S.W.2d 6 (1983).

■■ Concerning McIntosh's final allegation that juror misconduct resulted from the jurors' discussion of McIntosh's earlier drug conviction and commutation of his sentence for same, we fail to see the error or any ensuing prejudice. McIntosh was tried as a habitual offender, thus, his prior conviction and sentence were before the jury. From the testimony taken at trial, it was obvious to the jury that McIntosh was not serving time when the present felony charges were filed, although he earlier had been awarded a fifty-year sentence. The decision whether to grant a new trial is left to the sound discretion of the trial court, and it is not reversed in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Vasquez v. State,* 287 Ark. 468, 701 S.W.2d 357 (1985). No such abuse of discretion or manifest prejudice was demonstrated in the instant case.

For the reasons set out above, we affirm.

THORNTON, J., not participating.