Cochise MILES *v*. STATE of Arkansas

CR 01-867                                    85 S.W.3d 907

Supreme Court of Arkansas
Opinion delivered October 3, 2002

244

*Craig Lambert* and *Richard L. Hughes*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Cochise Miles was tried and convicted of capital-felony murder and two counts of aggravated robbery, resulting in a sentence of life without parole for capital-felony murder plus two consecutive thirty-year sentences for the two counts of aggravated robbery. He now appeals his convictions and challenges the sufficiency of the evidence, the trial court's refusal to strike a juror for cause, the trial court's denial of his motions for a mistrial and a new trial, and the trial court's refusal to enforce the terms of a negotiated plea agreement. We find no error and affirm.

On February 17, 1997, Cochise Miles and Tommy Phillips entered Freight Damaged Foods in southwest Little Rock armed with hand guns. The two hid in back of the store until it closed at 6:00 p.m. Meanwhile, the manager of Freight Damaged Foods, Van Dean Clouse, was unaware of the two men's presence. After the store closed, he moved to the front of the store to close out the

registers. Carr Stalnaker, a Frito-Lay employee, was stocking shelves in the rear of the store. At about 6:25 p.m., Phillips went to the front of the store to rob Clouse while Miles stayed in the back to control Stalnaker. Both men were wearing knit caps and bandanas to conceal their identities.

While at the front of the store, Phillips demanded that Clouse give him all the money in the store. Clouse complied and gave him about $200. Phillips then ordered Clouse into a cooler at the rear of the store. He also directed Miles to take Stalnaker to the cooler. As they walked toward the cooler, Stalnaker heard Phillips saying repeatedly, "if there's not any more money than this, somebody's gonna die." Shortly after Clouse and Stalnaker were ushered into a cooler, Phillips and Miles moved them to a second cooler. At that point, Stalnaker and Clouse informed the robbers that they had families and asked the men to just leave with the money. Phillips told them to shut up, and then repeatedly raised and lowered his gun, each time pointing it at Clouse's head. Stalnaker realized that Phillips was "psyching himself up" to kill Clouse. Phillips shot Clouse in the head, killing him. Stalnaker then ran out of the cooler, out the back door, and down an alley. During Stalnaker's escape Miles fired his weapon twice.[1] Stalnaker escaped uninjured. Phillips and Miles then ran through the woods to a nearby equipment rental business where Miles's bandana and cap were discovered the following day, along with live 9mm and .22 caliber rounds similar to those found at the Freight Damaged Foods store.

Phillips and Miles were arrested and each charged with capital-felony murder and two counts of aggravated robbery. The cases were severed, and Miles entered into a plea agreement with the State. In exchange for Miles giving testimony against his accomplice, Tommy Phillips, the State agreed to reduce the charges against Miles to first-degree murder and to recommend a twenty-year sentence.

---

[1] The factual theories as to Miles's purpose in firing the weapon are disputed. Miles testified he fired the weapon into the air; whereas, the State argued at trial that he shot at Stalnaker.

The State elected to try Phillips first. At that trial, Miles testified truthfully that he and Phillips were involved in the aggravated robbery. However, during closing arguments the trial court declared a mistrial. Phillips was then retried and Miles testified again. This time, however, he stated that neither he nor Phillips had anything to do with the crimes. Despite this testimony, Phillips was convicted at the second trial. The State subsequently claimed it was not bound by the plea agreement negotiated with Miles because he had not testified truthfully at his accomplice's second trial.[2] As a result, the State proceeded to trial on the original charges, and Miles was convicted of capital-felony murder and two counts of aggravated robbery. On appeal, Miles seeks to have his convictions set aside.

## I. Sufficiency of the Evidence

In his first point on appeal, Miles asserts that the evidence submitted at trial is insufficient to support the capital-felony murder conviction and that the court erred in denying his motions for a directed verdict at the close of the State's case and at the close of all the evidence. As a threshold matter, we note that Miles admits his involvement in the aggravated robbery but asserts that the evidence submitted at trial, when viewed in light of the capital-felony murder affirmative defense, was insufficient to support the capital-felony murder conviction. We disagree.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.*

---

[2] The Phillips conviction was affirmed by this court. *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001).

Capital murder under section 5-10-101 of the Arkansas Criminal Code provides in pertinent part that:

> (a) A person commits capital murder if:
>
> (1) Acting alone or with one (1) or more other persons, he commits or attempts to commit . . . robbery . . . and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to human life;
>
> * * * *
>
> (b) It is an affirmative defense to any prosecution under subdivision (a)(1) of this section for an offense in which the defendant was not the only participant that the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission.

Ark. Code Ann. §§ 5-10-101(a)(1), (b) (Repl. 1997). Miles bases his sufficiency challenge solely upon the affirmative defense set forth in section 5-10-101(b). Miles was therefore required to prove his affirmative defense by a preponderance of the evidence. Ark. Code Ann. § 5-1-111(d) (Repl. 1997). As previously noted, Miles admits he participated in the aggravated robbery that culminated in the murder of Clouse. However, he asserts that he did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission, and was in fact surprised by it.

■ We have previously ruled on this issue in a similar case. In *Arnett v. State*, 342 Ark. 66, 27 S.W.3d 721 (2000), the defendant was convicted of capital-felony murder. She argued that the trial court erred in denying her motion for a directed verdict where she asserted an affirmative defense because she was merely present at the murder and took no part in it. *Id.* We stated that to sustain a conviction of capital-felony murder, it is not necessary that the defendant be shown to have taken an active part in the killing as long as she was an accomplice to, and had the requisite intent for, the underlying felony. *Id.* (*citing Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998)). In this case, the defendant admits committing and being an accomplice to the underlying felony, that is, to the aggravated robbery. That admission alone is ade-

quate grounds to affirm. Nonetheless, the result would be no different had Miles argued that the evidence viewed as a whole was insufficient to support the verdict. The evidence presented at trial shows that Miles and Phillips agreed to rob Freight Damaged Foods armed with weapons. They both hid in the back of the store until it closed. They then covered their faces with bandanas and their heads with caps and used their weapons to control Clouse and Stalnaker in the store. After Phillips took money from Clouse, Miles helped usher the two victims back into a cooler under gun point. In the cooler, Miles continued to help Phillips keep control of the victims. Phillips then shot and killed Clouse, and Stalnaker escaped out the door.

■ The evidence set out above is sufficient to convict Miles of capital-felony murder, as well as aggravated robbery. The affirmative-defense provision in section 5-10-101(b) does not relate to the *intent* of the accomplice in relation to the murder; rather, it refers to the accomplice's *actions* leading up to the murder: "[T]hat the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission." Ark. Code Ann. § 5-10-101(b). Thus, in this case, a jury could reasonably conclude from Miles's actions during the robbery that he induced, procured, or aided in the murder of Clouse. We therefore affirm the trial court's denial of the motion for a directed verdict.

## II. Challenge for Cause of Prospective Juror

Miles next asserts that the trial court erred in refusing to strike a prospective juror for cause. The juror, Judy Kaye Mason, is an Assistant City Attorney for the City of Little Rock. Following the court's adverse ruling, Miles utilized one of his peremptory challenges to excuse Ms. Mason. On appeal, he does not challenge the impartiality of the jury that was in fact selected, but instead contends that the prospective juror should have been excused for cause.

■ ■ We have continually stated that the loss of a peremptory challenge cannot be reviewed on appeal and that the appeal focuses specifically on those who were seated on the jury.

*Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001); *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000); *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999); *Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998). Judy Kaye Mason was not seated on the jury and, therefore, Miles presents no cognizable claim for relief. Furthermore, a challenge must show that the appellant was forced to accept a juror who should have been excused for cause. *Branstetter v. State, supra.* Miles makes no claim on appeal that he was forced to accept any juror. Accordingly, his argument on this point is wholly without merit.

### III. The State's Use of Inconsistent Factual Theories

For his third point on appeal, Miles contends that the trial court erred when it denied his motion for a mistrial. Miles maintains that the State took contradictory positions at his trial and the trials of his accomplice, Tommy Phillips. In so doing, he concludes that his right to due process and a fair trial were violated. This argument, however, assumes facts not in evidence; thus, we must affirm without reaching the merits.

Miles failed to properly preserve the record below. His assertion that the prosecutor's theories changed between trials is not supported by the record before us. The pertinent parts of the record in the Phillips trials were neither made a part of the record below, nor were they properly made a part of the record on appeal. Indeed, defense counsel improperly suggested otherwise by including an abstract of portions of the Phillips record in the appellant's abstract and brief. It is well settled that the appellant bears the burden of producing a record that demonstrates error, and thus we do not consider matters outside of the record on appeal. *Hicks v. State*, 340 Ark. 605, 12 S.W.3d 219 (2000); *Odum v. State*, 311 Ark. 576, 845 S.W.2d 524 (1993); *Sullinger v. State*, 310 Ark. 690, 840 S.W.2d 797 (1992). As we cannot tell from the record before us under what theory the prosecutor proceeded at the Phillips trials, we do not address the merits and affirm the trial court.

## *IV. Rule 606(b)*

After Miles was convicted, his defense counsel, aided by a private investigator, interviewed eight jurors and recorded their statements. Based upon these interviews, counsel filed a motion for a new trial that suggested the jury improperly considered the evidence and jury instructions. Miles submitted transcripts of the interviews with jurors as exhibits to the motion. The trial court neither granted nor denied the motion within thirty days of the date the motion was filed. Therefore, pursuant to Ark. R. App. P.—Crim. 2(b)(1) (2002), the motion was deemed denied. Miles asks this court to hold that, in light of the interviews with jurors, his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution have been violated. He also challenges the constitutionality of Ark. R. Evid. 606(b) (2002).

██ ██ Pursuant to Rule 606(b) of the Arkansas Rules of Evidence, the evidence submitted by Miles in support of his motion is clearly not admissible. *See, e.g., McIntosh v. State*, 340 Ark. 34, 8 S.W.3d 506 (2000); *State v. Osborn*, 337 Ark. 172, 988 S.W.2d 485 (1999). Specifically Rule 606(b) provides as follows:

> (b) *Inquiry into Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received,* but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought upon any juror.

Ark. R. Evid. 606(b) (2002) (emphasis added). The purpose of this rule is to balance the freedom of jury deliberations with the ability to correct an irregularity in those deliberations. *Davis v. State*, 330 Ark. 501, 956 S.W.2d 163 (1997). We have unequivocally stated that any effort by a lawyer to gather information in violation of Rule 606(b) to impeach a jury's verdict is improper.

*Garner v. Finch*, 272 Ark. 151, 612 S.W.2d 304 (1981); *Sanson v. Pullum*, 273 Ark. 325, 619 S.W.2d 641 (1981).

Nonetheless, Miles challenges the constitutionality of Ark. R. Evid 606(b) "to the extent that [it] bars consideration of the evidence that supports [his] claim for relief." As support for his argument, he refers to various federal constitutional amendments and then cites to a string of unrelated cases: *Griffin v. California*, 380 U.S. 609 (1965); *Washington v. Texas*, 388 U.S. 14 (1967); *Rock v. Arkansas*, 483 U.S. 44 (1987); and *Ross v. Moffitt*, 417 U.S. 600 (1974). None of these cases supports his claim that Rule 606(b) should be declared unconstitutional. We have frequently stated that "we will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research the argument is well taken." *Hollis v. State*, 346 Ark. 175, 179, 55 S.W.3d 756, 759 (2001).

██ ██ In any event, the United States Supreme Court has held that a defendant has no right to present inadmissible evidence and has thereby condoned the bar of certain types of evidence. *See Taylor v. Illinois*, 484 U.S. 400 (1988). Further, we have maintained that Rule 606(b) serves the important functions of securing private, frank jury deliberations, and protecting the finality of judgments. *State v. Osborn*, 337 Ark. 172, 988 S.W.2d 485 (1999).

## V.  Specific Performance of a Plea Agreement

For his final point on appeal, Miles argues that the trial court erred in refusing to enforce the terms of a negotiated plea agreement. Miles entered into a plea agreement with the State whereby he agreed to testify truthfully at his accomplice's trial in return for a reduced charge of first-degree murder with a sentence recommendation of twenty years. At the accomplice's first trial, Miles testified truthfully that he and Phillips committed the aggravated robbery. That trial, however, ended in a mistrial. At the accomplice's second trial, which resulted in a conviction, Miles changed his testimony, claimed that his former statement was coerced, and testified that neither he nor Phillips had anything to

do with the crime. The State maintained that Miles's testimony at the second trial constituted a breach of the plea agreement and refused to honor it.

Miles cites the Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257 (1971), as support for specific enforcement of the plea agreement. However, in that case the State conceded its inadvertent breach of the plea agreement. *Id.* In the case before us, the State maintains that Miles was the breaching party. Thus, *Santobello v. New York, supra,* is inapposite.

The crux of the disagreement between the parties focuses on the interpretation of the word "trial." Miles suggests that "trial" means only the first of his accomplice's trials and does not necessarily include subsequent trials on the same issue. The State, on the other hand, contends that "trial" means a full determination of the claims brought into court ending in a judgment that has legal force. Miles also claims that under contract principles, any ambiguity should be construed against the drafter — the State in this case.

■■ ■■ When a dispute arises over the meaning of a plea agreement, this court will discern the intent of the parties "as expressed in the plain language of the agreement viewed as a whole." *United States v. Taylor*, 258 F.3d 815 (8th Cir. 2001) (citing *United States v. Kelly*, 18 F.3d 612 (8th Cir. 1994)). Under the circumstances of the plea agreement in this case, we are not persuaded that the word "trial" applies solely to the first trial that ended in a mistrial. Clearly, the intent of the parties was for the testimony to be used in a trial deciding the issue of guilt. Viewing the plain language of the agreement as a whole, we conclude that Miles was obligated to give truthful testimony in a proceeding leading to an adjudication of the legal issues.

■■ Phillips was convicted at the second trial; that is, the issue of guilt was decided at the second trial. By testifying falsely at the accomplice's second trial, Miles breached the plea agreement, and the State was no longer obligated to abide by its terms. Based upon these facts, we conclude that Miles was not entitled to specific enforcement of the plea agreement under the Supreme Court's holding in *Santobello v. New York, supra.*

For the foregoing reasons, the judgment of convictions and sentences are affirmed. The record has been reviewed for other reversible error, as required by Supreme Court Rule 4-3(h), and none has been found.

Affirmed.