# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2727

_____

United States of America,            *
                                       *

       Plaintiff - Appellee,      *

                                         *      Appeal from the United States

      v.                               *      District Court for the Western

                                         *      District of Missouri.

                                         *

Jose Maria Sanchez-Godinez,    *

                                         *

                                         *

      Defendant - Appellant.     *

_____

Submitted: December 13, 2005

Filed: April 14, 2006

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Jose Maria Sanchez-Godinez was found guilty by a jury of possession of marijuana with intent to distribute. The district court[1] imposed a sentence of seventy months. Sanchez-Godinez appeals, challenging the district court's ruling on a hearsay

_____

[1] The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

objection to out-of-court statements. He also alleges that the trial court erred in permitting the prosecutor to define "distribution" in his closing argument when that term was not defined by the jury instructions. We affirm.

I. Background

On May 22, 2004, Missouri State Highway Patrol Canine Officer Gary Braden stopped a U-Haul truck being driven by Sanchez-Godinez after observing Sanchez-Godinez driving seventy-eight miles per hour in a seventy miles per hour zone. At the time of the stop, Sanchez was traveling eastbound on Interstate 44 in Missouri. The truck rental agreement stated that Sanchez-Godinez had picked up the truck in Los Angeles, California, and was to return it in Kansas City, Missouri, on May 26, 2004. Sanchez-Godinez told Braden that he was in the process of moving from Los Angeles to St. Louis. Sanchez-Godinez appeared nervous and provided conflicting responses to some of the trooper's general inquiries about his purpose and route of travel. In the cab of the truck, Braden saw discarded food containers, personal belongings, and two cellular telephones with chargers. These indicators led Braden to believe that Sanchez-Godinez was transporting contraband.

Braden issued Sanchez-Godinez a warning for speeding and advised him that he was free to leave. After doing so, Braden obtained permission to search the truck. Sanchez-Godinez was unable to provide a key to the lock that secured the rear bay door. Braden used a narcotics-trained canine to sniff the exterior of the truck. Braden's canine alerted him to the possible presence of drugs. The truck was escorted to the Highway Patrol's Troop D Headquarters in Springfield, Missouri. Officers removed the lock, searched the truck, and found approximately 542 kilograms of marijuana. Officers also found dryer sheets and baking soda, which are commonly used to mask the odor of marijuana. Sanchez-Godinez was then arrested and given his Miranda warnings by Braden.

Following his arrest, Sanchez-Godinez was interviewed by Special Agent Mark Hooten of the Drug Enforcement Agency (DEA) and Daniel Banasik, a DEA Task Force Officer and sergeant with the Missouri State Highway Patrol. Hooten testified that the purpose of the interview was to learn how Sanchez-Godinez obtained the marijuana, what his role was, where the marijuana was going, who was to receive the marijuana, and whether the marijuana could be taken to its destination in a controlled delivery.

Although Sanchez-Godinez could communicate with the officers in English, Sanchez-Godinez preferred to answer in Spanish. Therefore, Special Agent Joel Jauregui of the Bureau of Alcohol, Tobacco, and Firearms (ATF) served as an interpreter. Jauregui testified that he is bilingual and that he serves as an interpreter for the ATF and for other agencies. Jauregui testified that during this interview he acted as both a translator and as a federal law enforcement officer.

Before the interview began, Jauregui re-advised Sanchez-Godinez of his Miranda rights in Spanish and Sanchez-Godinez signed a waiver of his rights. According to Hooten, throughout most of the interview Hooten and Banasik asked questions in English to Jauregui, who would then pose the question to Sanchez-Godinez in Spanish. Sanchez-Godinez answered the questions in Spanish, with Jauregui translating the answers into English. Sanchez-Godinez answered some questions directly in English and clarified in English some answers given by Jauregui. Jauregui testified that during the interview, Sanchez-Godinez admitted to knowing about the marijuana in the truck. He also testified that Sanchez-Godinez told him where he had picked up the marijuana and where it was going.

On July 12, 2004, Sanchez-Godinez was charged by indictment with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). On September 10, 2004, Sanchez-Godinez filed a Motion to Suppress Evidence and Statements. On September 27, 2004, the government filed its

Suggestions in Opposition. A hearing was held on November 2, 2004. On November 22, 2004, the magistrate recommended the denial of Sanchez-Godinez's motion. The district court adopted the magistrate's recommendation.

On February 17, 2005, Sanchez-Godinez's jury trial commenced. During the government's presentation of evidence, Hooten testified regarding Sanchez-Godinez's interview. In particular, Hooten testified as to the substance of statements purportedly made in Spanish by Sanchez-Godinez to Jauregui. Sanchez-Godinez's attorney objected to this testimony, arguing that Hooten's testimony as to what Jauregui told him Sanchez-Godinez said was hearsay. The district court denied the objection.

Sanchez-Godinez's attorney also objected to the government's mention during closing argument of the statutory definition of "distribution" contained in 21 U.S.C. § 802(11). Sanchez-Godinez's attorney argued that because the definition was not included in the jury instructions, it was improper for the government to advise the jury of that definition during closing argument. After a bench conference, this objection was also overruled.

Following a finding of guilt by the jury, Sanchez-Godinez filed a motion for a new trial. He argued that the government impermissibly argued law outside the jury instructions, thereby denying his right to a fair trial. The district court denied his motion. On June 14, 2005, the district court sentenced Sanchez-Godinez to seventy months of imprisonment. Sanchez-Godinez brought this timely appeal.

II. Hearsay

We review the district court's rulings regarding the admissibility of out-of-court statements for abuse of discretion. United States v. Londondio, 420 F.3d 777, 784 (8th Cir. 2005). "We will reverse only 'if an error substantially prejudiced the

outcome.'" Id. (quoting United States v. Roach, 164 F.3d 403, 408 (8th Cir. 1998), cert. denied, 528 U.S. 845 (1999)).

Hearsay evidence is generally excluded from testimony. Fed R. Evid. 802. Admissions by a party opponent or a party opponent's agent, however, are not hearsay. Fed. R. Evid. 801(d)(2). At issue in this appeal is testimony given by Hooten as to out-of-court statements made by Jauregui as Jauregui translated for Sanchez-Godinez. Generally, an interpreter is "viewed as an agent of the defendant; hence the translation is attributable to the defendant as his own admission and is properly characterizable as non-hearsay under Rule 801(d)(2)(C) or (D) . . . ." United States v. Da Silva, 725 F.2d 828, 831 (2d Cir. 1983); United States v. Lopez, 937 F.2d 716, 724 (2d Cir. 1991) (stating that "an interpreter is 'no more than a language conduit and therefore his translation [does] not create an additional level of hearsay." (quoting United States v. Koskerides, 877 F.2d 1129, 1135 (2d Cir. 1989) (alteration in original))).

In this case, Jauregui served as the interpreter. The fact that Jauregui is a government employee does not, by itself, necessarily prevent him from being Sanchez-Godinez's agent. See Da Silva, 725 F.3d at 832. However, Jauregui testified that he was acting as both a translator and a federal law enforcement officer. Jauregui testified that he not only translated, he also "Mirandized" Sanchez-Godinez and asked the types of questions he "normally would ask" in his capacity as an ATF agent. Because Jauregui was not merely acting as a "language conduit," but rather initiated at least some of the questions posed in the interview, his out-of-court statements raise hearsay concerns. Lopez, 937 F.2d at 724.

Even if we assume that Hooten's testimony was hearsay, the admission of the testimony was harmless. "[W]e will not reverse an evidentiary error that was harmless." Londondio, 420 F.3d at 788. "'An evidentiary error is harmless if the substantial rights of the defendant were unaffected and the error did not influence or

had only a slight influence on the verdict.'" Id. (quoting United States v. Wipf, 397 F.3d 677, 682 (8th Cir. 2005)). Here, Sanchez-Godinez has not shown any reason to doubt the accuracy of Hooten's testimony. Sanchez-Godinez was sufficiently fluent in English that he was able to understand Jauregui's translations and ensure their accuracy. In fact, Sanchez-Godinez clarified or added to some of Jauregui's answers. Further, Jauregui testified at trial regarding Sanchez-Godinez's statements. This testimony was substantially similar to Hooten's testimony, thus making the purported hearsay evidence cumulative of other testimony by the declarant. Also, Jauregui's in-court testimony gave the defense an opportunity to cross-examine Jauregui regarding the out-of-court statements. Finally, the evidence against Sanchez-Godinez was overwhelming. Accordingly, any error regarding the admission of Jauregui's out-of-court statements was harmless.

III. Closing Argument

Sanchez-Godinez argues that the district court abused its discretion when it allowed the prosecutor to define the term "distribution" during its closing argument. "Trial courts have broad discretion in controlling closing arguments . . . ." United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000). We review rulings on the content of closing arguments for abuse of discretion. Id.

To establish reversible prosecutorial misconduct, a defendant must demonstrate that: 1) the prosecutor's comments were improper; and 2) the comments prejudicially affected substantial rights such that the defendant was denied a fair trial. Id. In this case, although the prosecutor performed a function typically reserved for the court, the comments did not prejudicially affect Sanchez-Godinez's substantial rights. Sanchez-Godinez concedes that the definitions given were "essentially correct statements of the law." Although it is improper for the government, rather than the court, to instruct as to any definitions, we conclude that when viewed in the context of the entire trial, any error in this case was harmless. See United States v. Dougherty,

810 F.2d 763, 768 (8th Cir. 1987) (concluding that a prosecutor's statement was harmless as it was "nothing more than a recital of the holding in [a prior case]"). Accordingly, the district court's actions did not constitute an abuse of discretion.

For the foregoing reasons, we affirm the decision of the district court.

_____