Cite as 2020 Ark. 148

# SUPREME COURT OF ARKANSAS
No. CR-19-391

| | |
|---|---|
| | Opinion Delivered: April 16, 2020 |
| JOSE RUFINO GARCIA-CHICOL<br>APPELLANT | APPEAL FROM THE BENTON<br>COUNTY CIRCUIT COURT<br>[NO. 04CR-17-2504] |
| V. | |
| STATE OF ARKANSAS<br>APPELLANT | HONORABLE BRAD KARREN, JUDGE<br><br>AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Appellant Jose Rufino Garcia-Chicol, who was convicted of rape, appeals the circuit court's denial of his motion for mistrial. Additionally, he appeals the circuit court's decision to admit into evidence a translation of a letter he wrote in Spanish. He contends that this admission violated both Arkansas Rule of Evidence 1009 and his Sixth Amendment right to confrontation. We affirm.

## I. *Background*

A jury convicted appellant of the rape of S.P., his stepdaughter, a minor who was less than fourteen years of age. Shortly before trial, while in the Benton County jail, appellant sent his wife a letter written in Spanish, which attempted to dissuade her from bringing his children to trial. Appellant's wife later turned the letter over to law

enforcement. The letter, and a translation of the letter created by an Arkansas certified interpreter, were admitted into evidence at trial over appellant's objections.

During the penalty phase, instructions were given on the offense of rape and the lesser-included offense of attempted rape. The jury mistakenly signed both the rape and the attempted-rape verdict forms after the foreman asked the bailiff what to do with the unused attempted-rape form and being told by the bailiff to sign it. Appellant requested a mistrial based on the bailiff's communication with the jury. The State responded that any prejudice to appellant could be cured by polling the jurors individually about their verdict. The circuit court polled the jurors individually, and the result was unanimous—appellant had been found guilty of rape alone. As a result of the jurors' unanimity, the circuit court denied the motion for mistrial and submitted a new verdict form to the jury to sign. The jury returned with a correctly signed form, finding appellant guilty of rape. Appellant was sentenced to life imprisonment. He timely filed his appeal.

II. *Discussion*

A.  Bailiff's Communication with Jury

Appellant first argues that reversible error occurred when the jury returned a guilty verdict on both the charge of rape and the lesser-included charge of attempted rape. He claims the bailiff's response to the foreman's question interfered with the jury's deliberations and a mistrial was the only appropriate remedy.

A mistrial is an extreme and drastic remedy to be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *McDaniel*

2

*v. State*, 2019 Ark. 56, at 2, 567 S.W.3d 847, 848. The decision whether to grant or deny a motion for mistrial lies within the sound discretion of the circuit court, and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. *Green v. State*, 2013 Ark. 497, at 26, 430 S.W.3d 729, 747.

During the jury's deliberations, the foreman of the jury asked the bailiff a question regarding the verdict forms, which resulted in the foreman mistakenly signing the forms for both rape and attempted rape. After sending the jury to lunch, the bailiff testified to his communication with the foreman:

| | |
|---|---|
| PROSECUTOR: | Mr. Monjure, while you were back with the jury and they were making their deliberations, did someone at some point come out to speak with you? |
| BAILIFF: | Actually, they knocked on my door after, and said, "We've got a verdict." |
| PROSECUTOR: | Okay. Did they—what else did they say to you? |
| BAILIFF: | Just—they were all talking amongst themselves, and they asked about—the foreman—I don't know his last name—said, "What do we do—what about this paper?" And he kind of went—he said, "I signed this one," and that was the rape charge. Correct? I mean, it was rape and attempted rape; correct? |
| PROSECUTOR: | Um-hmm. |
| BAILIFF: | That was the rape charge. And, then, I don't know—I just kind of hesitated and just said, "Sign it." |
| PROSECUTOR: | Okay. So he—he told you, "We have a verdict"? |
| BAILIFF: | Yes. |
| PROSECUTOR: | You opened the door. |
| BAILIFF: | Yes. |

PROSECUTOR: And, then, you—do you see a paper signed at that point in time?

BAILIFF: Yes.

PROSECUTOR: What paper do you see at that point in time?

BAILIFF: Well, honestly, I couldn't read it. But he said, you know, "We found him guilty of rape. I don't know what to do with this or what to do with the other form."

PROSECUTOR: Did you see the other form he said, "We don't know what to do with?"

BAILIFF: Yes.

PROSECUTOR: Okay. What was that form?

BAILIFF: Well, I couldn't read it. I just—what he verbally said.

PROSECUTOR: Just what he told you?

BAILIFF: Yes, ma'am.

PROSECUTOR: So what did he tell you verbally when he told you about that other form?

BAILIFF: He said this one, you know, was attempted rape.

PROSECUTOR: Okay. When you told him to sign it, did you tell him to sign it "guilty" or "not guilty?"

BAILIFF: No. I think—no, I just said, "I guess sign it." Yeah, something—

PROSECUTOR: So you did not tell him which way—

BAILIFF: No.

PROSECUTOR: —to sign it? And to your understanding, you did not—you did not even talk to him until after they formed the guilty verdict on the rape charge?

BAILIFF: Yes, ma'am.

PROSECUTOR: The greater offense?

BAILIFF: Correct.

Appellant argues that by counseling the foreman to sign the additional verdict form, the bailiff inserted himself into the jury's deliberation and prevented the circuit court from addressing their confusion. The circuit court is required to call the jury into open court to answer any question it may have. Ark. Code Ann. § 16-89-125(e) (Repl. 2005). Section 16-89-125(e) provides:

> After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the counsel of the parties.

The provisions of subsection (e) are mandatory, in part, to ensure the jury is not misinformed regarding the law. *Sanders v. State*, 317 Ark. 328, 343, 878 S.W.2d 391, 400 (1994). Noncompliance with section 16-89-125(e) gives rise to a presumption of prejudice, and the State has the burden of overcoming that presumption. *Tarry v. State*, 289 Ark. 193, 197, 710 S.W.2d 202, 205 (1986). The State concedes that it had the burden of proving there was no prejudice.

We addressed bailiff misconduct under a set of similar facts in *Williams v. State*, 264 Ark. 77, 568 S.W.2d 30 (1978). In *Williams*, this court reversed the circuit court's order that denied the defendant's motion to set aside the verdict. The motion was based upon allegations that the bailiff had responded to the jury on a question of law. Specifically, one of the jurors came out and told the bailiff that they could not come to an agreement because one of the jurors was a friend of the key witness. When asked what could be done

5

about it, the bailiff responded, "Well, it's too late to do anything about it now." After hearing testimony from the bailiff, the circuit court denied the motion to set aside.

In reversing the circuit court, this court relied on Ark. Stat. Ann. § 43-2139 (Repl. 1964), the former version of section 16-89-125(e). The *Williams* court held that the inquiry made by the foreman was a request for information on a point of law, and his failure to require the bailiff to conduct the jury into open court was contrary to the statute and constituted misconduct. 264 Ark. at 80, 568 S.W.2d at 31. The good intentions of the bailiff and the foreman were not enough to excuse noncompliance with the statute. *Id.* *Williams* is, however, distinguishable from the instant case. There, the foreman communicated with the bailiff while the jury was in the middle of deliberations, making it impossible for the circuit court to determine whether matters outside the record influenced the jury in reaching its verdict. In the case at bar, the bailiff testified that when he spoke with the foreman, the jury had already found appellant guilty of rape and had signed the rape verdict form. Therefore, the bailiff's instruction to the foreman to sign the additional form could not have infected the jury's deliberations.

The State avers that any prejudice to appellant was cured when the circuit court polled each member of the jury individually, and a new verdict form was submitted to it. Arkansas law permits the polling of jury members. Arkansas Code Annotated section 16-89-128 (Repl. 2005) provides that once a verdict has been reached, the jury may be polled at the request of either party. When polling jurors, the inquiry is limited to determining that the verdict is that of each juror and whether he or she was improperly influenced by

6

outside information. *Ashby v. State*, 271 Ark. 239, 241, 607 S.W.2d 675, 676 (1980).  At the State's suggestion, each juror was brought into the courtroom separately and asked the following four questions: (1) what was their verdict; (2) of what charge; (3) was the verdict unanimous; and (4) whether the juror was influenced by any outside source. Each juror answered "guilty," "rape," "yes," and "no" to the questions. Appellant argues that this polling of the jury was improper under Rule 606(b) of the Arkansas Rules of Evidence.

Rule 606(b) outlines the circumstances under which a juror may or may not be interviewed about the verdict. Specifically, Rule 606(b) states as follows:

> (b)  *Inquiry into Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but *a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.*

Ark. R. Evid. 606(b) (emphasis added). Paragraph (b) of this rule prohibits inquiry into a juror's state of mind during deliberations; the circuit court may only ask whether any external influence or information could have played a part in the jury reaching its verdict. *See Butler v. State*, 349 Ark. 252, 264, 82 S.W.3d 152, 159 (2002). The purpose of this rule is to balance the freedom of jury deliberations with the ability to correct any irregularity in those deliberations. *Miles v. State*, 350 Ark. 243, 251, 85 S.W.3d 907, 912 (2002) (citing *Davis v. State*, 330 Ark. 501, 956 S.W.2d 163 (1997)).

7

Appellant complains that the question posed to the jury on whether the vote was unanimous was, in effect, asking each juror to testify about what the other eleven jurors were thinking. Rule 606(b) plainly states that a juror may not testify as to the effect of anything upon his mind as influencing him to assent to the verdict. *Arnold v. State*, 2012 Ark. 400, at 4. However, we do not read paragraph (b) to preclude a question on the jurors' unanimity during polling, as the question did not require a juror to divulge his or her state of mind when reaching a verdict, nor does it expressly delve into matters or statements occurring during deliberations. This court has maintained that Rule 606(b) serves to protect private, frank jury deliberations, and ensure the finality of judgments. *Miles*, 350 Ark. at 252, 85 S.W.3d at 913. The circuit court's questions for the jurors did not disturb this purpose. The court properly restricted the scope of its questioning of jurors to the verdict and whether any outside source had influenced them. Accordingly, no prejudice arose from the bailiff's comments to the foreman, as shown by polling the members of the jury individually.

## B. Admission of Translated Foreign Document

Appellant argues the circuit court erred in allowing the State to admit a letter he had handwritten in Spanish as well as a document containing the letter's English translation because the accompanying affidavit did not comply with Rule 1009 of the Arkansas Rules of Evidence. We review evidentiary rulings under an abuse-of-discretion standard and will not reverse a circuit court's ruling absent a manifest abuse of discretion

and a showing of prejudice. *E.g.*, *Thomas v. State*, 349 Ark. 447, 451, 79 S.W.3d 347, 349 (2002).

Rule 1009 governs the admission of foreign-language documents. Translations of foreign-language documents are admissible upon a qualified translator's affidavit, which sets forth the qualifications of the translator and certifies the accuracy of the translation. Ark. R. Evid. 1009(a). The affidavit, along with the translation and the underlying foreign-language document, must be served upon all parties at least forty-five days before the date of trial. *Id.* Paragraph (b) of Rule 1009 requires a party to object to any translation by pointing out specific inaccuracies of the translation at least fifteen days prior to trial. Failure to object to the accuracy of a translation precludes a party from attacking or contradicting the translation. Ark. R. Evid. 1009(c).

While in jail, appellant wrote a letter to his wife, which was mailed out on September 5, 2018. In the letter, appellant asked his wife not to bring their daughters to court on September 26, the day of his jury trial. He also instructed her to stay away from her house and not answer the phone. On September 12, the State received the letter from law enforcement and made a request for the letter to be officially translated. An affidavit was executed by the State's translator on September 13, attesting that he was an Arkansas certified interpreter in the English and Spanish languages, and that the translated document he composed was a true, accurate, and complete translation of appellant's letter.

On September 19, appellant filed a motion in limine to exclude the letter based on undue prejudice. A hearing was held the following day on the motion in which the circuit

9

court heard arguments from both parties. The court subsequently denied appellant's motion in limine, concluding it was admissible under Rule 404(b) of the Arkansas Rules of Evidence. At trial, appellant objected to the admissibility of the English translation on the grounds that the document violated his right to confrontation. This objection was overruled, and the translation of the letter was admitted into evidence.

Appellant now asserts that the State's notice of its intent to use the translated letter pursuant to Rule 1009 was defective because he was not given forty-five days' notice. Additionally, he argues the translator's affidavit did not comply with Rule 1009 because, instead of certifying that the translation was "fair, accurate, and complete," as paragraph (a) dictates, it certified the translation to be "*true*, accurate and complete." (Emphasis added.) The violation of paragraph (a) did not render the translation inadmissible, appellant contends, but instead meant that the translator himself was required to appear in court to testify.

At the pretrial hearing, appellant's counsel conceded that the State was not at fault regarding the timing of the disclosure of the letter because it had been composed the week prior, and the State needed to translate the letter. Paragraph (f) of Rule 1009 states that "[t]he court, upon motion of any party and for good cause shown, may enlarge or shorten the time limits set forth in this rule." Ark. R. Evid. 1009(f). The requirement that the State submit a motion to shorten the forty-five-day notice period was substantially met when the circuit court held a hearing on appellant's motion in limine and the State presented to the court its case for admitting the letter on short notice. Additionally, appellant's argument

10

that the translator's affidavit is defective because it used the word "true" instead of "fair" is not a meritorious ground for reversal. Appellant suffered no prejudice from this slight alteration in wording.

Appellant also claims admission of the letter violated his Sixth Amendment right to confrontation. He argues he was caught by unfair surprise when he was unable to cross-examine the translator of his letter. The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S Const. amend. VI; *see also Vankirk v. State*, 2011 Ark. 428, at 3, 385 S.W.3d 144, 147 (noting that the Confrontation Clause is incorporated into the Arkansas Constitution via the Fourteenth Amendment). The Supreme Court, in *Crawford v. Washington*, held that the Confrontation Clause bars the admission of testimonial statements unless the witness is unavailable to testify, and the defendant has previously had the opportunity to cross-examine the declarant. 541 U.S. 36, 59 (2004). Nontestimonial statements are not subject to the Sixth Amendment. *Davis v. Washington*, 547 U.S. 813, 821 (2006).

The Supreme Court further developed this "testimonial" standard outlined in *Crawford* in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011). In *Melendez-Diaz*, the Court held that a forensic-laboratory report ranks as testimonial for the purposes of the Confrontation Clause when the report had been created specifically to serve as evidence in a criminal proceeding. The prosecution may not introduce such a report without offering a live witness competent to testify to the

veracity of the statements made in the report. *Id.* Likewise, in *Bullcoming*, the Court held the Confrontation Clause was not satisfied when the analyst who performed a forensic report was unavailable, and the prosecution put on another analyst from the same lab to testify about the tests. The Court concluded that the analyst who composed the report that was introduced into evidence must be available for confrontation. Meanwhile, this court has said statements made to a government official are presumptively testimonial, while statements made to a nonofficial are presumptively nontestimonial. *White v. State*, 2012 Ark. 221, at 6, 408 S.W.3d 720, 724 (citing *Vankirk*, *supra*). We have further held that admission of certificates of a breathalyzer's proper calibration and its operator's qualifications were nontestimonial because they were admitted to show the machine's accuracy and the operator's qualifications to perform a test. *Chambers v. State*, 2012 Ark. 407, at 10, 424 S.W.3d 296, 302.

While neither this court nor the Supreme Court has directly addressed whether a translated statement should be attributed to the translator or the declarant under a Sixth Amendment analysis, this issue has been examined by the federal circuits. Generally, an interpreter is viewed as an agent of the defendant, and the translation is attributable to the defendant as his own admission. *E.g.*, *United States v. Sanchez-Godinez*, 444 F.3d 957, 960 (8th Cir. 2006) (holding that an interpreter was not acting purely as a language conduit because he initiated at least some of the questions posed to the defendant in an interview). An interpreter is no more than a language conduit and therefore his translation does not create any additional hearsay. *Id.* The Ninth and Fifth Circuits have both applied this

"language conduit" principle in the context of Sixth Amendment arguments and concluded that an interpreter's statements are statements of the declarant for the purposes of the Confrontation Clause. *United States v. Orm Hieng*, 679 F.3d 1131, 1139 (9th Cir. 2012); *United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000). A defendant and an interpreter should be treated as identical for testimonial purposes if the interpreter acted merely as a language conduit. *Orm Hieng*, 679 F.3d at 1139 (citing *United States v. Nazemian*, 948 F.2d 522, 528 (9th Cir. 1991)). In determining whether an interpreter is acting as a conduit, a court should consider all relevant factors, including which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with statements as translated. *Id.* (citing *Nazemian*, 948 F.2d at 527).

With these criteria in mind, it is clear appellant cannot establish that the State's translator was anything more than a language conduit. Appellant has not attacked the translator's qualifications, and the record indicates the translator was highly qualified. Further, appellant has not alleged any motive on the part of the translator to mislead or to distort the contents of his letter. Thus, the circuit court properly treated the State's translator as a mere language conduit for appellant. Pursuant to *Crawford*, appellant did not have a constitutional right to confrontation because the translated statements were directly attributable to appellant and, therefore, nontestimonial.

### III. *Rule 4-3(i)*

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant. No prejudicial error has been found.

Affirmed.

BAKER, J., concurs without opinion.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. The problem with admitting the translation of the letter into evidence is not just that it failed to certify itself as a "fair, accurate, and complete" translation. First, aside from whether it was certified as such, this document simply was not a "complete" translation. In several places, the translation document simply provides that whatever the letter written in Spanish contained is "unintelligible." If the translation document was going to be allowed into evidence, then the defense should have been able to examine the translator about these disparities. Moreover, considering that the defendant denied writing or sending the letter, the defense should have been able to examine the translator about the circumstances in which the letter was presented to him. In other words, whether the translator had functioned solely as a "language conduit" for the defendant's statements was in dispute, *and* there was additional extraneous information within the translator's knowledge that should have been ripe for cross-examination.

Allowing the translation document into evidence without having the translator there to testify was erroneous. Since the defendant received the maximum sentence, prejudice is demonstrated. *See, e.g., Kitchell v. State*, 2020 Ark. 102, 10, ___ S.W.3d ___ (citing *Buckley v. State*, 341 Ark. 864, 20 S.W.3d 331 (2000). In this case, the testimony against the defendant was inconsistent in key respects, and there was no DNA or other scientific evidence that would tend to confirm that a sex crime had occurred. The prosecution's burden of proof is guilt beyond any reasonable doubt. Perhaps allowing the defense to examine the translator would have been the difference in the outcome. Accordingly, we should reverse and remand for a new trial so that confidence may be afforded to the jury's verdict.

I dissent.

*Hancock Law Firm*, by: *Sharon Kiel*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for appellee.