Gyronne BUCKLEY *v.* STATE of Arkansas

CR 99-1081                                        20 S.W.3d 331

Supreme Court of Arkansas
Opinion delivered July 7, 2000

*John Alexander Thomas,* Judge;

*Jack T. Lassiter* and *Pamela Epperson,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Kelly K. Hill,* Deputy Att'y Gen. and *David R. Raupp,* Sr. Ass't Att'y Gen., for appellee.

LAVENSKI R. SMITH, Justice. Appellant Gyronne Buckley appeals his convictions on two counts of delivery of a controlled substance, both Class Y felonies, for which he was sentenced to two consecutive life terms by a Clark County jury. Buckley asserts that four trial errors require reversal. One occurred during the guilt phase of the trial and three during the sentencing phase. We find merit in Buckley's contention that the trial court erred in admitting certain hearsay evidence in the sentencing phase of his trial and therefore reverse and remand for new sentencing.

*Facts*

Buckley's arrest and subsequent conviction followed two arranged drug purchases from Buckley by informant Corey Livsey. Arkadelphia Police arrested Livsey on January 12, 1999, for shoplifting. In exchange for dismissing these charges against him, Livsey agreed to participate in attempted crack cocaine purchases from Buckley under the supervision of the Arkadelphia Police Department and the South Central Drug Task Force, which operated in Clark County. Police released Livsey from custody that same afternoon. Livsey returned to the police department early that same evening, and the Arkadelphia police officers and the Drug Task Force officers wired Livsey with a body microphone so they could listen to Livsey as he attempted to buy drugs from Buckley.

The officers expected the sale to take place at Buckley's residence. They dropped Livsey off in Buckley's neighborhood a couple of blocks away from Buckley's home. According to Livsey, who testified at trial, Buckley invited him inside after he knocked at the door of Buckley's house. According to Livsey, he pulled forty dollars from his pocket and asked to buy crack cocaine, using slang terms to ask for the drugs. The audio tape, however, itself con-

tained no conversation clearly indicating that a drug transaction was taking place. Livsey testified that he bought two rocks of cocaine for $20 apiece, and then left the house. The police picked up Livsey a few blocks away and retrieved the drugs from him. The participating officers testified at trial that they searched Livsey before the transaction took place to verify that he had no drugs on his person before the sale, and also searched him afterward to verify that he no longer had the task-force money on his person. The following day, January 13, 1999, the officers arranged another "buy" with Livsey, who once again wore a body microphone. Just as the previous day, the officers took Livsey to Buckley's neighborhood and dropped Livsey off with his bicycle. Livsey rode his bicycle to Buckley's house, played basketball with some teenagers outside, and spoke with Buckley. According to Livsey, the pair went into Buckley's backyard, and Buckley sold Livsey more crack cocaine. Livsey then left the house and was picked up by the officers. The police searched Buckley's house on January 14, 1999, and gathered tweezers, aluminum foil with marijuana seeds in it, a pill bottle with white residue in it, and a plastic sandwich bag with residue in it at the scene. On the same date, the police arrested Buckley for selling cocaine to Livsey. The Clark County Prosecuting Attorney filed a felony information on January 14, 1999, charging Buckley with two Y felonies for the delivery of a controlled substance.

On May 17, 1999, Buckley's attorney filed a motion in limine requesting, in part, that the trial court exclude anticipated testimony about Buckley's reputation as a drug dealer. The defense pointed out that Buckley had never been arrested or convicted on any prior drug-related crimes. The trial court ruled that the State could not present such evidence unless the defense put it at issue. The trial court reserved its decision on the use of this information during the sentencing phase of the trial.

A jury trial began on May 25, 1999. During voir dire, the jury was selected from a panel of twenty-five venire persons, including seven African-Americans. Of these seven venire persons, three were excused for cause, one was excused because she had been subpoenaed by the defense, and the State struck the fifth with a peremptory challenge which survived a *Batson* challenge by the defense. Juror Number Five, Tennie Wilson, was the only African-American chosen from the venire to serve on the jury. Buckley did not raise any jury-selection issues on appeal.

The State presented six witnesses in its case in chief: Dan Hedges, William Summerville, Jr., Roy Bethell, Corey Livsey, Keith "Buck" Ray, and Linda Card. Hedges, a forensic scientist with the Arkansas State Crime Lab, testified that the evidence sent to the crime lab tested positive for crack cocaine. Summerville, Jr. and Bethell explained how the drug buys were arranged with the assistance of confidential informant Livsey, to whom they paid $100.

The State's final two witnesses were Ray and Card, investigators with the South Central Drug Task Force. Ray testified primarily about how confidential drug informants are found and that many people who are arrested for unrelated charges are used as informants. Ray also testified about the slang terms used during a drug transaction, such as the term "hookup," a term used when a person is looking for drugs. Card next testified regarding her role in the operation. Card acted as the case agent, the person who keeps track of all of the evidence and paperwork in the case. Card noted that she took the drugs from Livsey after each transaction, packaged and marked them, and then transported them to the State crime lab. She also testified that she monitored the sound system during both drug transactions.

During a break in Ray's testimony, the bailiff apprised the trial court of a situation involving Tennie Wilson, the only African-American juror. Wilson told the bailiff that she wanted to be excused from the jury because she had previously dropped a person off in Buckley's neighborhood and that she did not want to be involved in anything that was improper. The trial court and the attorneys questioned Wilson, who testified that she knew that her passenger used drugs, but that she did not know why she dropped the person off in that neighborhood. Wilson indicated, however, that she could follow the court's instructions and that she would listen to all of the evidence and be fair and impartial in making her decision. The court also questioned the bailiff who Wilson approached with this information, and the bailiff indicated that Wilson stated, "I never saw anything, but I know what was going on." The trial court then ruled that Wilson remained qualified to sit on the jury.

Upon hearing this, the defense moved for a mistrial, arguing that these events would be prejudicial to Buckley. The State

responded that it would be willing to use the alternate juror if the defense so requested, but the defense argued that Wilson was the only African-American juror remaining on the jury, and to dismiss her would be highly prejudicial to Buckley. The trial court first granted the mistrial stating, "I'm going to grant this motion and we can try it again. With her being the only African-American, based upon what's occurred, I think it places the defense in the position where even if he wanted to — I mean, he's really not in the position to do anything." The State then requested that the court reconsider its position and argued that the purpose for choosing the alternate juror, a person on whom both parties agreed, was so that there would still be twelve jurors available should one be dismissed. Eventually, the trial court gave the defense the option of striking Wilson and proceeding with the alternate juror, or allowing Wilson to remain and continuing the case. Regardless, the trial court ruled that a mistrial would not be granted. The defense again noted its objection, but chose to allow Wilson to remain on the jury, and the trial continued.

After the close of the State's case, Buckley moved for a directed verdict arguing that there was insufficient evidence that Buckley sold drugs to Livsey, that there was a chain-of-custody problem with the drug evidence at the State crime lab, that the State did not meet its burden of proof, and that Livsey had the opportunity to get the drugs from other sources during the periods in which he was not in the presence of the police. Buckley also renewed his mistrial motion, and added that he had no choice but to keep Wilson because the Caucasian jurors might speculate as to why the only African-American juror had been dismissed from the case. The trial court denied Buckley's motion for directed verdict, and also denied his renewed motion for mistrial, reiterating the reasons each African-American venire person had been eliminated from the venire.

The defense presented five witnesses. In addition to recalling Summerville and Bethell, Buckley testified on his on behalf along with his mother, nephew, and one of Buckley's friends. Buckley testified regarding the clothing and accessories retail business he and his wife operated in Houston, where they resided, and in Arkadelphia, where Buckley's mother and family lived. Regarding the alleged drug transaction on January 12, 1999, Buckley testified that Livsey showed up at his house and immediately pulled cash out

of his pocket. Buckley told him to put his money away. Buckley testified that Livsey randomly talked about his girlfriend and how she was mad at him, and that their conversation ended there. Buckley then testified that on January 13, 1999, he was helping his mother repair a water faucet in her house, and he did not know what Livsey was doing at his house that day. He denied that his voice can be heard on the January 13, 1999, tape recording, and that Livsey did not go into his house that day. Buckley denied ever seeing the pill bottle or other drug evidence seized from his house.

The defense next presented Jezeree Buckley, the defendant's mother, who testified that Buckley was in her house fixing a faucet on January 13, 1999. Paul Buckley, Buckley's nephew, testified that he was playing basketball on January 13, 1999, and briefly conversed with Livsey and Buckley, and then noted that Buckley went into his mother's house to fix her faucet. The defense also questioned several witnesses who had purchased clothes and other items Buckley sold out of his house and car for his retail business. Talesha Howard, a friend of Buckley's, testified that she was at the house on January 12, 1999, when Livsey came in, and that she did not see any drug transactions taking place while she was there.

The defense rested its case, and the State requested to present rebuttal testimony to counteract testimony from Buckley. The trial court rejected this request. Buckley then renewed his motion for directed verdict, arguing again that the evidence failed to establish a connection to his client and that the State failed to meet its burden of proof. Buckley also renewed his motion for a mistrial based on the jury situation. The trial court denied both motions.

Before the jury retired to deliberate, the court released the alternate juror from duty because she would not be involved in deliberations. After deliberations, the jury returned with a guilty verdict on both counts, and the court moved to the sentencing stage of trial. Before the witnesses testified, the defense objected to the State using certain hearsay and character evidence against Buckley, arguing that the evidence the State wanted to use would be hearsay evidence presented by the police officers and that hearsay was not proper. The State responded that statutory and case law allowed character evidence to be used against Buckley at this stage in the proceedings, and the trial court overruled Buckley's objection.

The State first questioned Officer Ray, who testified that during the eight years he had been with the Drug Task Force, he had investigated Buckley for distributing crack cocaine. Ray testified that several confidential informants had made "buys" from Buckley in 1988, 1994, 1995, and 1996. Ray testified that Buckley was never convicted, however, because the confidential informants failed to appear so that Buckley could be prosecuted. On cross-examination, the defense further questioned Ray about the 1988 arrest which occurred before Ray was a member of the Drug Task Force. Ray admitted that Buckley had never been convicted of a drug-related crime before this case, and that the State had never been able to prosecute or charge Buckley for any of these alleged crimes.

Buckley presented witnesses, including Summerville, Sr., who testified that Buckley helped him "kick" a drug habit, and Buckley's wife, Denise, who testified about her husband's good character. Buckley also testified about growing up in Arkadelphia and living in Houston. He admitted that he used to have a drug problem, but that he got help and was able to overcome his habit.

At the close of the evidence, the defense again renewed its motion for a mistrial and for a directed verdict. The court noted these objections for the record. The parties then went through the jury instructions, at which time the defense presented AMCI 9001 to allow alternative sentencing for this case. The State objected to this instruction, arguing that there were two Class Y felonies at issue, that Buckley had threatened someone's life, and that an alternative form had to be filled out for such a sentence. The alternative sentencing allowed probation for these particular crimes. The trial court refused to give the instruction stating, "Yes, based upon the evidence and the fact that these are two Class Y felony charges." The court also noted the defense's objection to the refusal of the instruction.

At the close of the sentencing stage of trial, the jury sentenced Buckley to two life sentences for these first offenses. The trial court then ordered that the sentences should run consecutively, and entered the Judgment and Commitment Order on May 27, 1999. Buckley timely filed his notice of appeal on June 23, 1999. It is from these convictions that Buckley appeals.

## Standard of Review

A trial court has wide discretion in admitting evidence of other crimes or wrongs, and its decision will not be reversed absent an abuse of discretion. Ark. Code Ann. § 16-97-101(2) (Supp. 1997); *Skiver v. State*, 336 Ark. 86, 983 S.W.2d 931 (1999); *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994); *Haynes v. State*, 309 Ark. 583, 832 S.W.2d 479 (1992); *Price v. State*, 268 Ark. 535, 597 S.W.2d 598 (1980). The decision to order a mistrial and retry a criminal defendant lies within the sound discretion of the trial judge, and will be upheld absent an abuse of discretion. *Phillips v. State*, 338 Ark. 209, 992 S.W.2d 86 (1999); *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991). The trial court should resort to a mistrial only where the error complained of is so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Stanley v. State*, 324 Ark. 310, 920 S.W.2d 835 (1996). A jury is presumed to be unbiased and qualified to serve, and the burden is on the appellant to show otherwise. *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996); *Franklin v. State*, 314 Ark. 329, 863 S.W.2d 268 (1993); *McFarland v. State*, 284 Ark. 533, 684 S.W.2d 233 (1985). It is for the trial court to decide whether the jurors are qualified, and that finding will not be reversed absent a showing of abuse of discretion. *Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995); *Cooper v. State, supra; Franklin v. State, supra; McFarland v. State, supra.*

Buckley raises four issues on appeal. First, Buckley argues that the trial court erred at the sentencing stage of trial in admitting hearsay testimony regarding alleged prior drug-related activity by Buckley for which he was never tried or convicted. Second, Buckley argues that the trial court erred in refusing to grant a mistrial when the sole remaining African-American juror requested to be dismissed from the jury because she was concerned about information she knew about Buckley's neighborhood. Third, Buckley argues that the trial court erred in refusing to consider the possibility of probation for which such a defendant could be eligible under the sentencing statutes. Finally, Buckley argues that his two consecutive life sentences constitute cruel and unusual punishment in violation of the Arkansas and United States Constitutions. We agree with Buckley's first point on appeal and reverse.

## Admission of Hearsay at Sentencing Stage

In his first argument on appeal, Buckley argues that the trial court erred in allowing hearsay testimony to come in during the sentencing stage of the trial. In particular, Buckley objected to testimony from the State's witness, Keith Ray, who testified regarding alleged prior drug activity of Buckley, for which Buckley was never charged, tried, or convicted. Ray testified that during the eight years he had been working with the Drug Task Force, the Task Force had had some of its confidential informants make controlled buys from Buckley in 1994, 1995, and 1996. Ray further testified that another controlled buy occurred in 1988 before he was a member of the Task Force. Furthermore, the State relied on this information in its closing argument during this stage of trial. Buckley notes that he objected to the admission of this evidence as hearsay evidence relating to Buckley's character before the State questioned Ray about these previous controlled buys, but that the trial court overruled the objection on the grounds that in Ark. Code Ann. § 16-97-103 and supporting case law, including *Davis v. State*, 60 Ark. App. 179, 962 S.W.2d 815 (1998), character evidence may be admitted at the sentencing stage of trial.

The State contends that evidence of Buckley's prior drug activity was admissible under Ark. Code Ann. § 16-90-801(a), § 16-97-101(2), and § 16-97-103(5) and (6). The State argues that Buckley's prior drug activity is relevant under *Nichols v. United States*, 511 U.S. 738 (1994), where prior criminal behavior was deemed admissible even where no conviction resulted. Evidence of Buckley's prior drug activity provided proof of his character and was relevant to the jury's determination of an appropriate punishment. In addition, such evidence was relevant as an aggravating circumstance under § 16-97-103(6).

■ Buckley actually objected twice to the admission of the evidence — once in a pre-trial motion in limine, and again immediately before Officer Ray testified at the sentencing phase of trial. The trial court ruled on the motion in limine that the State could not present testimony that Buckley was a drug dealer at the guilt phase of the trial unless the defense raised the issue of his character first, and this information was never revealed during the guilt phase of the trial. However, the trial court reserved its ruling as to the admissibility of this evidence at the sentencing phase. At the sen-

tencing phase, however, the State's only witness, Officer Ray, focused his entire testimony on the fact that Buckley had been under Task Force investigation since 1988, and that the Task Force had set up controlled buys from Buckley in 1988, 1994, 1995, and 1996. While Buckley objected on hearsay grounds to the admission of this type of evidence before Ray testified, the trial court ruled that it was admissible at the sentencing phase under Ark. Code Ann. § 16-97-103. The relevant portions of Ark. Code Ann. § 16-97-103 state:

> Evidence relevant to sentencing by either the court or a jury may include, but is not limited to, the following, provided no evidence shall be construed under this section as overriding the rape shield statute, § 16-42-101:
>
> * * *
>
> (5) Relevant character evidence;
>
> (6) Evidence of aggravating and mitigating circumstances. The criteria for departure from the sentencing standards may serve as examples of this type of evidence;
>
> (7) Evidence relevant to guilt presented in the first stage;
>
> (8) Evidence held inadmissible in the first stage may be resubmitted for consideration in the second stage if the basis for exclusion did not apply to sentencing;

From this statute, it appears that certain evidence is admissible at sentencing which would not have been admissible at the guilt phase of the trial. Such is the holding, as well, in *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994) and *Davis v. State*, 60 Ark. App. 179, 962 S.W.2d 815 (1998). As we noted in *Hill*, "The introduction of evidence during this stage must be governed by our rules of admissibility and exclusion; otherwise, these proceedings would not pass constitutional muster, which is all the more reason to permit appeal." *Hill*, 318 Ark. at 413. However, the court also noted that once the jury has determined that the defendant is guilty, additional evidence, even evidence regarding attempted crimes, may be admissible if it gives the jury as much information as possible when it makes its sentencing decisions. *Id.*

■ Here, while evidence of prior sales by Buckley would certainly give the jury more information to make its sentencing

decision, the evidence is still subject to the rules of evidence. The testimony at issue in Buckley's objection occurred when Officer Ray testified about the prior drug buys. Ray's reference to the 1988 drug buy, which occurred before he became a Task Force officer, would necessarily be hearsay because he did not have personal knowledge of the events. It is clear from Ray's testimony that he gained his knowledge of the 1988 drug buy from reading a court docket. This is hearsay under Ark. R. Evid. 801, which states that hearsay is "a statement (oral or written)... other than the one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." Moreover, Ray's testimony regarding purported buys in 1994, 1995, and 1996 were similarly objectionable in that Ray demonstrated no first hand knowledge of the facts to which he testified.

In order to obtain reversal, Buckley must not only show that the trial court erred in its admission of hearsay but also show that the erroneous admission prejudiced him. *Windsor v. State*, 338 Ark. 649, 1 S.W.3d 20 (1999); *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996). Where the jury used this testimony to impose a punishment of two life sentences, we hold that prejudice has been demonstrated and accordingly reverse.

### Denial of Mistrial

Buckley next argues that the trial court erred in refusing to grant his motion for mistrial based on the juror problem with Tillie Wilson. Buckley argues that he was placed in an untenable position in that Wilson was the only African-American juror on the jury and she wanted to be dismissed. To dismiss her, Buckley argues, would have rendered the jury without an African-American juror, but to keep her could have been just as problematic. Wilson indicated upon questioning that she had dropped off someone, whom she knew used drugs, in Buckley's neighborhood. Buckley also argued that her dismissal would appear unusual to the other jurors and cause them speculation as to why she was dismissed.

The State counters that the trial court did not abuse its discretion in refusing to grant a mistrial because Wilson testified that she brought this information to the court's attention in a show of honesty, and that Wilson indicated that she could continue to

decide the case fairly on the facts presented at trial. In addition, any prejudice that may have existed could have been cured by using the alternate juror, whom the defense agreed upon. Furthermore, the State notes that Buckley neither raised a *Batson* challenge to the jury before it was finalized, nor does he now on appeal, although he argues about the race of the jurors.

In order to succeed on this point, Buckley must show that the trial court abused its discretion in failing to grant the mistrial, and he must show that there was prejudice in the trial court's ruling on the issue of the juror and alternate. *See, e.g., Heinze v. State*, 309 Ark. 162, 827 S.W.2d 658 (1992); *Sutherland v. State*, 292 Ark. 103, 728 S.W.2d 496 (1987). Here, the trial court presented Buckley with an option: retain Wilson on the jury or allow the alternate to replace her. Buckley argues that such a choice was not acceptable, but we disagree. First, it should be noted that there is no indication in the abstract or the record that Buckley opposed the seating of the alternate as a member of jury. Arkansas Code Ann. 16-30-102(a) (Repl. 1994) states in relevant part:

> (b) Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examinations and challenges, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.

> (c) Each opposing side shall be entitled to one (1) peremptory challenge in addition to those otherwise allowed by law. The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by these rules by this section may not be used against an alternate juror.

Buckley's failure to object to the alternate being seated, and his decision not to use the alternate instead of Wilson when he had a choice, renders this argument moot. First, Buckley cannot now argue that the alternate was not qualified when he did not object to the alternate's presence on the jury. In other words, he did not have a problem with the alternate when she was seated; therefore, he did not preserve an objection to the alternate possibly sitting on the jury. Second, Buckley's decision to continue with Juror Wilson appears to be one of trial technique or tactic in that his argued reason for deciding to retain Wilson was because he was

afraid of the appearance and speculation the other jurors might make on such a change. Seating or exclusion of a juror may be a trial technique, see *Catlett v. State*, 331 Ark. 270, 962 S.W.2d 313 (1998) and *Irons v. State*, 272 Ark. 493, 615 S.W.2d 374 (1981) (noting, in dicta, that the seating of a juror may be a matter of trial strategy), and Buckley has not shown the jury in place was biased against him. We therefore affirm the trial court's denial of a mistrial.

### Alternate Sentencing Instruction

In his third argument, Buckley asserts that the trial court erred in refusing to consider the possibility of probation for delivery of cocaine, an alternative sentence available at the trial court's discretion, under Ark. Code Ann. § 5-64-601 and § 5-4-104. The State responds first that although Buckley raises this point as error below, he does not request reversal on the issue, but instead requests that the court consider the issue here in case this appeal is reversed or remanded for sentencing. Furthermore, the State argues that the trial court did not abuse its discretion by mistakenly ruling that this alternative sentencing was not available for Buckley. Instead, the trial court decided that in this case, it would not present such an alternative to the jury based on the facts of the case. Finally, the State argues that Buckley cannot demonstrate prejudice, even if the trial court abused its discretion, because the trial court's denial of an alternative sentencing measure indicates that the court was disinclined to consider alternative sentencing even if the jury had recommended it under the instruction.

The State concedes to Buckley's argument that probation is an alternative sentence available for cocaine delivery offenses such as this under Ark. Code Ann. § 5-4-104(e)(1)(A), § 5-64-401(a)(1)(i), and § 5-4-301(a)(1). Buckley argues that this form of alternative sentencing was made available in Act 192 of 1993, when the legislature removed certain language from the controlling statutes prohibiting such a sentence. However, the decision to allow alternative sentencing is reviewed for an abuse of discretion. Ark. Code Ann. § 16-97-101. On remand, the giving of an instruction regarding probation as an alternative sentence will be in the trial court's sound discretion.

## Disproportionate Sentencing

In his last point on appeal, Buckley argues that two life sentences for first-offense delivery of a controlled substance constitutes cruel and unusual punishment under the United States and Arkansas Constitutions. While Buckley concedes that this court has held that a sentence within the range of punishment for a crime cannot be reduced, he argues that the United States Supreme Court has held that it is the duty of the judiciary to determine whether the legislature has violated the Constitution with regard to proportionality of the sentence. Buckley argues that his sentence constitutes cruel and unusual punishment because his sentence is grossly disproportionate to the offense as to shock the moral sense of the community. We do not reach this argument in this case because we reverse on other grounds.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

Reversed and remanded.

ARNOLD, C.J., not participating.