Cite as 2020 Ark. 340

# SUPREME COURT OF ARKANSAS

No. CR-20-294

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 22, 2020 |
| DONALD CAPLE | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-18-1731] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE BARRY A. SIMS, JUDGE |
| | | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On December 11, 2019, a Pulaski County Circuit Court jury convicted appellant Donald Caple of rape and second-degree sexual assault; he was sentenced to life imprisonment and twenty years' imprisonment, respectively, and ordered to pay a $15,000 fine. From his conviction and sentence, Caple presents three issues on appeal: (1) there was insufficient evidence for Caple's rape conviction; (2) the circuit court abused its discretion by not instructing the jury on the offense of attempted rape; and (3) the circuit court abused its discretion by allowing a witness to testify at sentencing about child-abuse statistics. We have jurisdiction over this case pursuant to Arkansas Supreme Court Rule 1-2(a)(2). We affirm.

On May 15, 2018, Caple was charged with one count of rape and one count of second-degree sexual assault of his granddaughter, L.H., beginning when she was four years old until she was eleven years old.

At trial, the State called the following witnesses. Rhonda McBain, Caple's daughter, testified that L.H. is her daughter.[1] McBain testified that on February 28, 2018, she received a call from L.H.'s school and was told that she needed to come to the school immediately to discuss information L.H. had disclosed to the counselor that could not be shared over the phone. McBain testified that she and her husband went to the school immediately, and the counselor explained that L.H. had disclosed that Caple had been sexually assaulting her. At trial, McBain testified that prior to marrying her husband, she was a single parent, having been divorced since 2008, with two young children and a full-time job. McBain testified that her parents moved back to Arkansas from Saudi Arabia in 2010 when L.H. was four, and they began to babysit her children at that time. She testified that Caple often babysat her children, L.H. and her brother J.H., throughout the year but especially during the summer months because she worked full time and could not afford child-care. McBain testified that Caple babysat in excess of one hundred days per year. McBain further testified that Caple, not McBain's mother, cared for her children as her mother was not "very friendly with kids . . . and [Caple] was much more hands-on taking the kids out to do activities . . . so he was much more the babysitter than she was." McBain testified that as L.H. got older, she noticed

---

[1]L.H. was born on March 28, 2006.

that L.H. was less interested in going over to Caple's home but "she didn't know why. I know with her schoolwork when she started sixth grade, I noticed her grades started dropping and I talked to the school counselor about that." McBain further testified that she also noticed that Caple was a lot closer to L.H. than to J.H. and favored L.H.

L.H. testified that Caple babysat L.H. and her brother often, beginning in 2010. L.H. testified that Caple began sexually abusing her at that same time, when she was four years old. She testified that also when she was four years old, she heard the word sex at school and asked Caple what the word meant. L.H. testified that Caple explained to her the meaning of the word and showed her pornography on her grandmother's laptop computer. She testified that he showed her pornography multiple times, and while they watched, the two were naked and Caple would touch her in her private areas. L.H. testified that Caple used his hands, mouth, and penis to touch her. L.H. testified that Caple touched her many times on her inner and outer folds and her "hole area." L.H testified that Caple would use his hand and rub her vagina. She further testified that Caple used his mouth and put his tongue in her "hole area." L.H. testified that it hurt when Caple touched her and he touched her "many, many times, about every time he babysat." L.H. testified that when she was in sixth grade, Caple lubricated his penis with Vaseline and put his penis in her vagina; she asked him to stop, but he continued and put a little bit of his penis in her vagina and then stopped. L.H. testified that white liquid came out of Caple's penis, and he put the liquid in a small towel. L.H. further testified that Caple told her she could not tell anyone or he would go to jail.

L.H. testified that she saw a YouTube post about a celebrity sharing a personal story, and that gave her the courage to tell her school counselor about the abuse.

Dr. Karen Farst, a pediatrician at Arkansas Children's Hospital, testified that she specializes in child-abuse cases and that she conducted an examination of L.H. Dr. Farst testified that in her examination, she did not find any physical findings of sexual abuse. Dr. Farst testified that it is common to not observe physical findings in sexual-abuse cases because the skin in the genital area heals quickly and also sexual contact may not have caused a physical injury. Dr. Farst used a diagram and testified to the anatomy of the female genital area.

Detective Eric Barnes of the Little Rock Police Department testified that he was assigned to L.H.'s case and observed L.H.'s statement as it was provided to Lisette Yang with the Children's Protection Center at Arkansas Children's Hospital. Detective Barnes further testified that on March 15, 2018, he interviewed Caple. In the interview, Caple admitted that he began touching L.H. when she was four years old after she walked in on Caple masturbating while he was watching pornography and began asking Caple what he was doing. Caple admitted touching L.H. and her vagina with his hands and mouth but denied inserting his penis into L.H.'s vagina. Caple stated that while naked, the two watched pornography together and he would touch L.H. Caple testified to touching L.H. multiple times over a number of years.

4

Caple testified in his own defense. Caple stated that he agreed with L.H.'s testimony; however, he testified that he did not penetrate her mouth or vagina with his penis. Caple testified that otherwise, L.H.'s testimony was accurate.

Based on the facts above, Caple was convicted of rape and second-degree sexual assault and sentenced as described above. This appeal followed.

I. *Points on Appeal*

A. Sufficiency of the Evidence

For his first point on appeal, Caple contends that the circuit court erred in denying his motion for directed verdict for Caple's rape conviction. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence.[2] *Whitt v. State*, 365 Ark. 580, 232 S.W.3d 459 (2006). When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Gillard v. State*, 366 Ark. 217, 234 S.W.3d 310 (2006). We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Ricks v. State*, 316 Ark. 601, 873 S.W.2d 808 (1994). Further, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the

---

[2]Caple was also convicted of sexual assault in the second degree but does not challenge the sufficiency of the evidence of this conviction.

evidence excludes every other reasonable hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* Additionally, "in rape cases, we have held that there is sufficient evidence to support a conviction if the victim gives 'a full and detailed accounting of the defendant's actions.' *White v. State*, 367 Ark. 595, 599, 242 S.W.3d 240, 249 (2006). Uncorroborated testimony of a rape victim is sufficient evidence to support a conviction. Inconsistencies in the rape victim's testimony are matters of credibility that are left for the jury to resolve. The jury may accept or reject testimony as it sees fit." *Ward v. State*, 370 Ark. 398, 400, 260 S.W.3d 292, 294–95 (2007) (internal citations omitted). Finally, "this court has observed that the State is not required to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *Rounsaville v. State*, 374 Ark. 356, 360, 288 S.W.3d 213, 216 (2008)." *State v. Coble*, 2016 Ark. 114, 4–5, 487 S.W.3d 370, 372–73.

Caple was convicted of one count of rape under Ark. Code Ann. § 5-14-103, which provides in pertinent part:

> (a) A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person:
>
> . . .
>
> (3)(A) Who is less than fourteen (14) years of age.

Further, Ark. Code Ann. § 5-14-101 provides:

6

(1) "Deviate sexual activity" means any act of sexual gratification involving:

(A) The penetration, however slight, of the anus or mouth of a person by the penis of another person; or

(B) The penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person[.]

With these standards in mind, we turn to Caple's challenge to the sufficiency of the evidence supporting his rape conviction and sentence. Caple contends that the State failed to prove he committed rape because the State failed to prove that sexual intercourse occurred; nor did the State prove that deviate sexual activity occurred. Specifically, Caple contends that the evidence is insufficient to support a finding that Caple penetrated L.H's vagina; the evidence is insufficient to support a finding that he penetrated L.H.'s mouth with his penis; and no deviate sexual activity occurred because there was no evidence of sexual gratification. In sum, Caple contends that L.H.'s testimony supports that Caple never penetrated her vagina and Caple's testimony that he had never penetrated L.H.'s mouth or vagina support his position that the State failed to prove that Caple ever engaged in sexual intercourse or deviate sexual activity with L.H. The State responds that Caple failed to preserve the issue for review and also that his argument lacks merit, asserting that L.H.'s testimony alone provides substantial evidence to support the conviction.

Here, the evidence demonstrates that L.H. testified that Caple touched the inside and outside of the folds of her vagina with his hands, his mouth, and his penis. She further testified that Caple went past the inner folds and put his penis into the opening of her

7

vagina. L.H. testified that Caple obtained Vaseline from Caple's wife, L.H.'s grandmother, and used it as a lubricant and went in "a little bit and then stopped." L.H. also testified that Caple put his penis inside her mouth, that he asked her to lick his penis, and that she "went up and down." Also, L.H. testified to Caple's ejaculating and using a towel to put the white liquid in when this occurred. Further, in his statement to law enforcement, Caple said that he rubbed L.H.'s clitoris and that "[he] would touch her vaginally and stimulate her." In this case, based on L.H.'s testimony, the hand, mouth, and penis contact establishes the necessary degree of penetration. L.H. testified that Caple would use his hand and rub her vagina, and Caple testified that he rubbed L.H.'s clitoris and that "[he] would touch her vaginally and stimulate her." With regard to Caple's penis, L.H. testified that he lubricated his penis with Vaseline and put his penis into her vagina "a little bit." L.H. also testified that Caple put his penis inside her mouth, that he asked her to lick his penis and that she "went up and down." Accordingly, based on this record, in viewing the testimony in the light most favorable to the jury's verdict, we hold that substantial evidence supports the jury's conclusion that Caple committed rape, and we affirm the circuit court.

B. Attempted-Rape Jury Instruction

For his second point on appeal, Caple contends that the circuit court erred when it refused to give a jury instruction on attempted rape. Caple asserts that he was entitled to an attempted-rape instruction because L.H. testified that Caple attempted to penetrate her vagina with his penis when he went in "a little bit" and then stopped. Caple contends that L.H.'s testimony created a rational basis for the instruction. The State responds that Caple

8

presented an all-or-nothing defense as he denied any penetration and therefore was not entitled to the attempted-rape instruction.

The test for whether an instruction should be given is whether there is the slightest evidence to support the instruction and whether there is no rational basis for giving the instruction. *Morris v. State*, 351 Ark. 426, 432, 94 S.W.3d 913, 917 (2003). Accordingly, in reviewing whether slight evidence or a rational basis exists for giving the instructions, the court considered what evidence Caple could have relied on as a rational basis to support giving the instruction. Caple must point to evidence in the record to support a finding that he attempted to commit the offense of rape. *See Flowers v. State*, 362 Ark. 193, 213, 208 S.W.3d 113, 129 (2005). On review, "a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Barnes v. Everett*, 351 Ark. 479, 492, 95 S.W.3d 740, 748 (2003). The circuit court's decision to give or reject an instruction will not be reversed unless the court abused its discretion. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 459, 47 S.W.3d 866, 885 (2001)." *Hundley v. State*, 2020 Ark. 89, 3, 594 S.W.3d 60, 61–62.

At trial, Caple proffered an instruction regarding the offense of attempted rape, which stated in pertinent part:

To sustain the charge of attempted rape the State must prove the following things beyond a reasonable doubt:

First:     That Donald Caple intended to commit the offense of rape;

Second: That Donald Caple purposely engaged in conduct that was a substantial step in a course of conduct intended to culminate in the commission of rape; and

Third: That Donald Caple's conduct was strongly corroborative of the criminal purpose.

Caple contends that he was entitled to this instruction, and the circuit court erred in refusing to give the instruction. Caple points to his own testimony that he did not penetrate L.H.'s mouth or vagina with his penis as evidence that would support that he attempted to commit rape. However, the credibility of witnesses is an issue for the jury and not the court. *Ricks*, 316 Ark. 601, 873 S.W.2d 808. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* In this case, the jury was presented evidence that Caple put his penis inside L.H.'s vagina; specifically, a little bit of Caple's penis went into her vagina. Further, she testified that Caple put his penis inside her mouth. Caple on the other hand, repeatedly stated to law enforcement that "penetration anything of that nature . . . no. None of that [occurred]."—"I've never penetrated her." Further, Caple testified at trial that he did not penetrate L.H.'s vagina or mouth with his penis. In sum, Caple testified that he drew the line at penetration and did not penetrate L.H. However, Caple also testified that he put his hand in her vagina, which does not support giving the attempted rape instruction. Here, given Caple's defense of complete denial of penetration, we hold that the circuit court did not abuse its discretion by not giving instructions on the offense of attempted rape.

C. Sentencing Phase

10

For his third point on appeal, Caple contends that during the sentencing phase, the circuit court erred by allowing McBain to testify to statistics as an expert witness. During sentencing, McBain testified that she had written a letter expressing how the offense had affected her family and read it to the jury. The following exchange occurred while McBain was reading her letter to the jury:

| | |
|---|---|
| MCBAIN: | His choices have affected my daughter and myself in ways that are full of grief and hurt and betrayal. The pain of a parent watching your child suffer every day is indescribable. My only hope and silver lining through all of this is that I can serve not only as her parent to help her heal and move forward, but to become an advocate for thousands of other children in our state who suffer through child abuse every day. One of the most important lessons I've learned, among so many others these last two years, is the statistics I have learned through my work at Arkansas Children's, close to 10,000 children – |
| DEFENSE COUNSEL: | Your Honor, I object. May we approach? |
| THE COURT: | Yes. |
| (BENCH CONFERENCE:) | |
| THE COURT: | Go ahead. |
| DEFENSE COUNSEL: | Your Honor, I mean, this is not victim impact, quotes, and I object to it. |
| THE COURT: | It's closing. |
| DEFENSE COUNSEL: | Huh? |
| THE COURT: | It's closing. |
| DEFENSE COUNSEL: | Well, it's not closing. This is victim impact, and I object to her quoting statistics. |

| | |
|---|---|
| THE COURT: | Okay. It's fine. She can do this. Thank you. |

(IN OPEN COURT:)

| | |
|---|---|
| THE COURT: | Go ahead, ma'am. |

(Witness continuing:)

| | |
|---|---|
| MCBAIN: | Thank you. The statistics I have learned through my work at Arkansas Children's, close to 10,000 children each year report child abuse in Arkansas. However, research shows that these are only the reported cases; and that two-thirds of child abuse cases go unreported. That means that there are so many other children like my daughter who are afraid to speak up. It will be my mission as a parent of a survivor to advocate for her and children like her to become educated and learn that it is okay to report things immediately because research has also shown that it is most often someone the family knows very well. |
| | I take the solace and the solace that justice will be served as my daughter and I continue to move forward and try to heal from all of this. I am and always will continue to try and stay helpful and move forward. Thank you all very much for listening to me, and thank you for your time. |

Caple argues that McBain was not qualified as an expert witness; rather, she was testifying as a lay witness whose testimony should have been limited to opinions or inferences that were rationally based on her perceptions and helpful to a clear understanding of her testimony. Caple contends that by testifying to specific statistics regarding sexual abuse in Arkansas, McBain provided testimony that was outside her opinions or inferences based on her perceptions in this case and was unduly prejudicial to him. The State responds that because Caple failed to make a specific objection at trial as to why he objected, Caple now

12

raises the issue for the first time on appeal and is barred from doing so. The State further responds that Caple's argument lacks merit and that any error was harmless.

With regard to victim-impact evidence, Ark. Code Ann. § 16-97-103 provides in pertinent part: "Evidence relevant to sentencing by either the court or a jury may include, but is not limited to, the following . . . (4) Victim impact evidence or statements." "Evidence presented under § 16-97-103 is intended to be used to give the sentencer, whether the trial judge or the jury, all evidence relevant to sentencing." *Hunter v. State*, 341 Ark. 665, 670, 19 S.W.3d 607, 610 (2000) (internal citations omitted). Further, "this court has made clear that the rules of evidence apply to evidence introduced at the sentencing phase; however, pursuant to section 16-97-103, certain evidence is admissible at sentencing that would not have been admissible at the guilt phase of the trial. Finally, a circuit court's decision to admit evidence in the penalty phase of a trial is reviewed for an abuse of discretion." *Brown v. State*, 2010 Ark. 420, at 12, 378 S.W.3d 66, 73 (internal citations omitted).

Here, we note that Caple did not object at trial that McBain's testimony was unduly prejudicial because McBain was not a qualified expert. Despite this, Caple argues that the circuit court erred in allowing expert testimony from McBain, and Caple was unable to cross-examine McBain in violation of his due-process rights. Further, Caple argues that McBain's testimony went beyond the impact this case had on the victim and her family by including her knowledge of thousands of other cases in Arkansas and "could serve to inflame the jury."

Upon review, we do not find merit in this argument. Caple failed to make this specific argument below. Further, in the record before us, McBain and L.H. both testified that L.H.

suffered from complex PTSD. McBain testified that her father's abuse of her daughter had caused tremendous suffering to her family and "our world has been rocked to the very core." McBain testified that her mission as a parent of a survivor was to advocate for children like her daughter that were afraid to speak up. Accordingly, McBain's testimony was relevant to show the impact the offense had on her family and was relevant to sentencing. Therefore, based on our discussion above, we affirm the circuit court on this point.

## II. *Rule 4-3(i) Review*

This case involves a sentence of life imprisonment; therefore, it is subject to review under Arkansas Supreme Court Rule 4-3(i). As required under Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Caple, and no prejudicial error has been found.

Affirmed.

HART, J., concurs in part; dissents in part.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.** I agree that the evidence is sufficient to support the conviction, but I disagree that witness McBain's testimony about statistics was acceptable victim-impact evidence during the penalty phase of trial. Caple correctly objected to this specific testimony below, and the circuit court's generalization that "this is closing" did nothing to resolve the problem. This was not closing argument—McBain was the first of two State witnesses to offer testimonial evidence during the penalty phase of Caple's rape trial.

14

Arkansas Code Annotated section 16-97-103(4) provides that the State may offer "victim impact evidence or statements" as evidence "relevant to sentencing" during the penalty phase of trial. In *Kitchell v. State*, this court discussed the contours of proper victim-impact evidence as follows:

> Further, the State's assertion that this was relevant victim-impact evidence is also incorrect. Arkansas Code Annotated section 16-90-1112(a)(1) (Supp. 2019) provides that the victim shall be permitted to present a victim-impact statement "concerning the effects of the crime on the victim, the circumstances surrounding the crime, and the manner in which the crime was perpetrated." Evidence regarding the effect on the victim's family from a previous sentence that has later been overturned does not fit within any of these categories.
>
> We have reversed a defendant's sentence when improper victim-impact was admitted. In *Miller v. State*, 2010 Ark. 1, 362 S.W.3d 264, we held that reversible error had occurred when the circuit court allowed two of the victim's family members to tell the jury that they believed the appropriate punishment for the crimes was death. We noted that this evidence was irrelevant to the jury's decision on punishment. *Id.* In addition, in *Walls v. State*, 336 Ark. 490, 986 S.W.2d 397 (1999), this court reversed and remanded for resentencing because evidence of another crime was erroneously admitted as victim-impact evidence; we held that the evidence was clearly not relevant and was unduly prejudicial. *See also Rush v. State*, 324 Ark. 147, 919 S.W.2d 933 (1996) (reversing and remanding for resentencing where prior victim of crime was allowed to testify).

2020 Ark. 102, at 8–9, 594 S.W.3d 848, 853 (internal citations included).

More basically, evidence offered in either the guilt or penalty phase of trial must satisfy the rules of evidence. *See Buckley v. State*, 341 Ark. 864, 874, 20 S.W.3d 331 (2000) ("The introduction of evidence during [the penalty phase] must be governed by our rules of admissibility and exclusion; otherwise, these proceedings would not pass constitutional muster[.]"). This would include Arkansas Rules of Evidence 401 and 402—together, these

15

rules require evidence to be relevant to any fact of consequence to the determination of the action before it is considered admissible. *See* Ark. R. Evid. 401, 402.

With all due respect to witness McBain, her testimony alleging statistics about sex crimes in Arkansas had nothing to do with the crime at hand or its impact on any victim of that crime. It simply was not relevant to the sentence Caple should receive for *this* charge, i.e., it was not victim-impact evidence. Furthermore, McBain's specific testimony about two-thirds of those crimes going unreported tended to invite the jury to punish Caple for those entirely unrelated crimes. *See Walls*, *supra*. Witness McBain's testimony about statistics was not proper victim-impact evidence, and the circuit court's decision to the contrary was erroneous.

Concurring in part; dissenting in part.

*James Law Firm*, by: *Nickolas W. Dunn* and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.