Cite as 2022 Ark. App. 436

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-22-20

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** November 2, 2022 |
| JACOREY GREEN | APPELLANT | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10CR-20-11] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE BLAKE BATSON, JUDGE |
| | | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Jacorey Green appeals his convictions for rape and second-degree sexual assault. He argues that the circuit court erred in denying his motion for directed verdict and in allowing messages between him and the victim's mother into evidence. We affirm.

In a criminal information filed in January 2020, the State charged Green with committing the offense of rape by engaging in sexual intercourse or deviate sexual activity with another person who was less than fourteen years of age. Specifically, Green was accused of anally raping his girlfriend's ten-year-old daughter. In August 2021, just prior to Green's jury trial, the State amended the information to include a charge of second-degree sexual assault.

At the jury trial, the following testimony was presented. Lieutenant Ashley Collier, a Caddo Valley police officer, received a report on 26 November 2019 that Green had

inappropriately touched a ten-year-old girl. Collier spoke to Green, and he confirmed that he lived with his girlfriend and her two children, ten-year-old C1 and eleven-year-old C2.

Sherry Cleek, an investigator at the Clark County Sheriff's Office, interviewed Green on December 9, and he said that C1 had been "touching on" him whenever her mom was not home. C1 also came into the bathroom while he was showering. Green denied ever touching C1. He was arrested after this interview. Cleek spoke to Green again on December 11, and he again denied that anything had happened between him and C1. Later, however, he admitted that C1 had touched his penis; he told her stop or he would tell her mother. He implied this happened more than once, saying, "There's, like, plenty more times that I'd tell her to stop." He also said C1 had seen him naked after she pulled back the shower curtain while he was showering. He then admitted that C1 had touched his penis over his clothes while he was sitting on the couch and in the kitchen.

Erica Matlock, C1's mother, said that she had learned of the allegations against Green after the children visited their grandparents and C1 told her aunt what had happened. Matlock had kept in touch with Green since his incarceration, sent him money, and bought him food. Green asked her on a weekly basis to "talk to the lawyers" and "get the truth out." She did not remember if Green had asked that C1 write an apology letter. To refresh her memory, the State moved to introduce messages (known also as a "message thread") sent from Green to Matlock; defense counsel objected, arguing that the message thread contained more information than Green's request for an apology letter and that it was hearsay. Defense counsel also asserted that there was no foundation for the extraneous information in the thread. The State countered that "the rule of completeness normally

2

requires us to give the entire statement, not just one word, so I gave the entire conversation." And it argued that the message thread was Green's own statement and therefore not hearsay. The court overruled the objection and allowed the thread into evidence as State's exhibit 4. In the thread, Green wrote, "[G]et your daughter to write me a sorry letter saying that she apologize for telling that lie on me I can turn it in to the state."

Christa Neal, a certified forensic interviewer and mental–health specialist, conducted a forensic interview with C1. Neal said that C1 seemed embarrassed and hesitant to talk about the details of the sexual abuse, which is common. Neal said many times, kids wait until they are away from their abuser to disclose abuse, which is consistent with C1's disclosing the abuse while at her grandparents' house.

C1, now twelve years old, said that she had been sitting on the bed in her mother's room watching television when Green came in the room, began to touch her, and put his private part in her butt. It was painful and lasted about five seconds. She also said that her brother had pushed her into the bathroom while Green was showering. She tried to tell her brother what had happened with Green, but he would not listen.

After the State rested, the defense moved for a directed verdict as follows.

> Deviant sexual activity under AMCI 2nd 1401 requires that there be some sort of sexual gratification involved.

> Now, not one whit of evidence, not one iota of evidence has been introduced to indicate that there was any gratification involved.

> Furthermore, in AMCI 2nd 1403, sexual contact also requires sexual gratification. And it's not something that we can just look over. It's a necessary part of the proof that the State has to present. It's not a question of whether sufficient evidence of sexual gratification was introduced; it's the fact that no evidence of sexual gratification was introduced.

3

The State countered,

> Your Honor, the child testified that he inserted his penis into her anus. . . . [T]here's no other purpose to insert a penis into an anus other than for sexual gratification.
>
> There's been ample testimony . . . that there was all of this sexual contact between him and the little girl even prior to the incident in the bedroom.
>
> We believe that [C1]'s testimony proved both of these counts as well as the other testimony. The idea that it's okay to stick your penis in someone's anus just as long as you didn't want some sexual gratification is absurd, and we ask the Court to deny that.

The motion was denied, as was its renewal. The jury found Green guilty of rape and second-degree sexual assault; Green waived sentencing by the jury and asked to be sentenced by the court in accordance with a recommended sentence from the State. On 26 August 2021, the circuit court sentenced Green to twenty-five years' imprisonment for rape and five years' imprisonment for second-degree sexual assault, to run concurrently. Green appealed the sentencing order.

## I. *Sufficiency of the Evidence*

We first address Green's sufficiency argument and determine whether the verdict is supported by substantial evidence, be it direct or circumstantial. *Foster v. State*, 2015 Ark. App. 412, 467 S.W.3d 176. Substantial evidence is that which compels a conclusion one way or the other and beyond suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* And the credibility of witnesses is an issue for the fact-finder, who is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Caple v. State*, 2020 Ark. 340, 609 S.W.3d 630.

4

A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3) (Supp. 2021). Second-degree sexual assault occurs when a person, being eighteen years of age or older, engages in sexual contact with another person who is less than fourteen years of age and not the person's spouse. Ark. Code Ann. § 5-14-125(a)(3) (Supp. 2021). "Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(11) (Supp. 2021). "Sexual gratification" is not defined in the statute, but the supreme court has construed the words in accordance with their reasonable and commonly accepted meanings. *Farmer v. State*, 341 Ark. 220, 15 S.W.3d 674 (2000). The State is not required to provide direct proof that an act is done for sexual gratification if it can be inferred that the desire for sexual gratification is a plausible reason for the act. *See id.* at 224, 15 S.W.3d at 677 ("[S]exual gratification, like intent, is rarely capable of proof by direct evidence and must usually be inferred from the circumstances.").

Green first asks this court to employ a "modified substantial-evidence standard," arguing that where an element of the conviction is a statutory presumption, the appellate courts view all the evidence to determine whether there is reasonable doubt about the existence of the element. As authority for this argument, Green cites *Smith v. State*, 264 Ark. 874, 575 S.W.2d 677 (1979), in which the supreme court discussed the statutory shoplifting presumption in effect at the time. Arkansas Statutes Annotated section 41-

5

2202(2) (Repl. 1977)[1] provided that the knowing concealment, upon his person or the person of another, of unpurchased goods or merchandise offered for sale by any store or business creates a presumption that the actor took the goods with the purpose of depriving the owner thereof. The appellant, Millie Smith, and her sister, Geraldine Wade, went to a Kroger store to shop and buy cigarettes for their mother. When Smith reached the cigarette racks immediately in front of the cash registers, she took two packages of cigarettes and put them into the pocket of a leather coat she was wearing in such a manner that they were completely concealed. Smith then went to a check-out line and purchased several items, not including the cigarettes. Smith next reached into her pocket, pulled the cigarettes out, and handed them to Wade, who was behind her in line. When Wade's items were checked, she paid for the cigarettes.

In reversing Smith's conviction for theft of property, the supreme court acknowledged that the shoplifting presumption was activated when Smith put the cigarettes into her pocket. But, the court explained, pursuant to Ark. Stat. Ann. § 28-1001, Rule 303(b) (Supp. 1977),[2]

> The court is not authorized to direct the jury to find a presumed fact against the accused. If a presumed fact establishes guilt or is an element of the offense or negatives a defense, the court may submit the question of guilt or of the existence of the presumed fact to the jury, but only if a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt.

Applying this rule to the facts at hand, the supreme court stated,

---

[1]Now codified at Ark. Code Ann. § 5–36–116(a)(1) (Supp. 2021).

[2]Now found at Ark. R. Evid. 303(b) (2022).

6

In this case, the intent to deprive the owner of the cigarettes was an element of the offense. The statutory presumption would justify the submission of the question of intent only if a reasonable juror on the evidence [a]s a whole, including the evidence of basic facts, could find the requisite intent beyond a reasonable doubt. This requires us to review the evidence on appeal quite differently than we do in the usual search for substantial evidence. When we view all the evidence in this case, we agree with the Attorney General that when appellant removed the cigarettes from her pocket and passed them to her sister, who put them in her own shopping cart and paid for them, we would be hard put to say that the test of reasonable doubt was sufficiently met on the question of intent, particularly in view of the fact that no accusation of theft, either express or implied, had been made before appellant had surrendered possession of the cigarettes.

. . . .

[W]e think that the trial judge was only left to speculation and conjecture in reaching the conclusion that appellant had the intent to deprive the owner of its property.

*Smith*, 264 Ark. at 878–80, 575 S.W.2d at 680–81.

Applying this reasoning to the present case, Green asserts that for both of his convictions, the State was required to establish that his actions were done for the purpose of sexual gratification—and he characterizes the sexual-gratification element as an implicit statutory presumption that may be rebutted. So Green concludes that this court should review all the evidence. He also argues that neither the rape nor the second-degree sexual-assault jury instructions notified the jury that an element of the charges against him was that he had acted with the purpose of sexual gratification. Green insists that under Rule 303's substantial-evidence standard, the State failed to meet its burden of proving that he acted with the purpose of sexual gratification.

Next, Green contends that the State presented no evidence that he acted with the purpose of sexual gratification. Below, the State asserted that there was no other purpose

7

for the sexual act that Green was accused of. But Green argues that if every inappropriate touch specified in the statute satisfied the sexual-gratification element, that element would be "mere surplusage." In support of Green's contention that he had "no sexual purpose in any of his interactions with" C1, he cites the reactions of C1's parents, neither of whom appeared upset with Green. He also notes that there was no DNA collected, C1 had no physical injuries, and there was no other physical evidence of rape. Instead, the entire case rested on C1's testimony. Green also says that there was evidence that he (Green) had to "fend her off to stop inappropriate interactions."

We first question whether Green has adequately preserved his argument for a modified standard of review. In the circuit court, he did not cite Rule 303 or argue that the court must evaluate whether some presumed-element issue should be submitted the jury. Also, to the extent he says the jury was improperly instructed, he did not object to the instructions below; and, importantly, did not proffer any alternative instructions.

Even if we have too narrowly construed Green's points to the circuit court, we still hold that to alter the standard of review as Green suggests would violate Arkansas Supreme Court precedent, which holds that when evaluating on appeal if the State has proved sexual gratification, the appellate court must use the substantial-evidence standard. *See*, *e.g.*, *Farmer*, *supra* (evaluating proof of sexual gratification under the substantial-evidence standard).

Viewing the evidence under the governing standard, as we must, we hold that substantial evidence supports the jury's verdict and the court's judgment. Green laments that the State's case rested on C1's testimony; but the appellate courts have consistently held that the uncorroborated testimony of the victim can alone be sufficient to support a rape or

8

sexual-assault conviction. *Caple, supra.* "The plain fact is that when persons, other than physicians or other persons for legitimate medical reasons, insert something in another person's vagina or anus, it is not necessary that the state provide direct proof that the act was done for sexual gratification." *Williams v. State*, 298 Ark. 317, 320–21, 766 S.W.2d 931, 934 (1989).

## II. *Admission of the Message Thread*

The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Beard v. State*, 2020 Ark. 62, 594 S.W.3d 29. The abuse-of-discretion standard is a high one that does not simply require error in the circuit court's decision but that the court act improvidently, thoughtlessly, or without due consideration. *Ventry v. State*, 2021 Ark. 96, 622 S.W.3d 630. Nor will we reverse absent a showing of prejudice, as prejudice is not presumed. *Edison v. State*, 2015 Ark. 376, 472 S.W.3d 474.

Green argues that the State failed to lay a proper foundation for State's exhibit 4, so the circuit court erred in admitting it. He cites the business-record exception to hearsay and says that the State failed to prove that the message thread met that exception. He concedes that his own statements in the thread are admissible under the hearsay exception for admissions by a party-opponent. But he does argue that the State had to lay a proper foundation before the exhibit could be admitted.

Next, Green contends that the admission of State's exhibit 4 prejudiced him because it contained statements that were detrimental to him and could have tainted the jury's

9

verdict. The message thread contains several references to Green being "on lockdown" because he had acted out or disobeyed rules. It also references his relationship with Matlock: "[Y]eah [I] did some things but that was only to make you realize what you was doing." And finally, at one point Green says that he has "learn[ed] [his] lesson," which the jury might have interpreted as an admission of guilt. Green says that these statements had nothing to do with the crimes he was charged with. He also argues that the evidence against him was minimal, while the evidence in his favor was "mountainous." He again notes the reaction of C1's parents, the lack of physical evidence, and C1's testimony supporting the State's entire case. And he again points out that he had to fend off C1's attempts to be physical.

We hold that Green did not raise the business-records portion of his argument at the circuit court level, so it is not preserved for our review. We will not consider arguments that are raised for the first time on appeal, and a party is bound on appeal by the nature and scope of the objections and arguments presented at trial. *Lopez-Deleon v. State*, 2014 Ark. App. 274, 434 S.W.3d 914.

We also hold that the circuit court did not abuse its discretion in admitting the message thread as evidence. Green's statements in the thread are admissible under the hearsay exception for admissions by a party-opponent, but he has failed to demonstrate prejudice from the admission of the entire message thread. The State introduced the thread to show Green asking Matlock to obtain an apology letter from C1, which is consistent with his claim of innocence and cannot, in our view, be characterized as prejudicial revelation. Green, in fact, asserts his innocence throughout the three-page message thread;

10

his statement about "learning his lesson," viewed in context, does not read as an admission of guilt. Instead, Green appears to be reminiscing about his relationship with Matlock and says that he has learned his lesson "to listen when [God] send[s] [a] sign to [him]." Having concluded that no reversible error was presented, the circuit court's judgment is affirmed.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Quattlebaum, Grooms & Tull, PLLC*, by: *Noah P. Watson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., and *Jacob Holland*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the Supervision of *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.